WESTERN UNION TEL. CO. v. POE, Auditor of State of Ohio, et al.

(Circuit Court, S. D. Ohio, E. D.   April 23, 1894.)

1. TAXATION—MARKET VALUE OF CORPORATE STOCK.

A tax upon the property of a telegraph company ("Nicholl's Law," Rev. St. Ohio, § 2778a), determined, in part at least, by the aggregate value of the shares of its capital stock, conflicts with a constitutional provision (Const. Ohio, art. 12, § 2) that the taxation of all taxable property shall be "by a uniform rule," because the market value of such stock bears no necessary relation or proportion to the value of the tangible property of the corporation, and because it involves elements of value, such as the good will and earning capacity of the business, which are not taxable in the state, and not used therein to determine the value of the taxable property of individuals or other corporations.

2. SAME—FRANCHISE OF CORPORATION.

Such tax cannot be supported as a tax upon the franchise of the corporation to do business in the state, or as a tax upon the business of the corporation, or as a tax upon the property of the corporation, combined with such franchise and business, because the legislature has not prescribed any definite mode of ascertaining the amount of such tax, and could not, under the constitution, commit the determination of such amount to the discretion of a board of appraisers.

3. INJUNCTION—ILLEGAL TAX.

A federal court has no general equitable jurisdiction in such case to enjoin a board of appraisers from certifying the amount to be assessed in each county upon the ground that such tax is illegal, nor does it acquire such jurisdiction under the provision of a state statute (Rev. St. Ohio, §§ 5848, 5849) that an action may be brought to prevent the illegal levy of a tax against a corporation or person beneficially interested in the proceeds, and against a county auditor who completes the levy by placing it on the tax duplicate.

4. SAME—MULTIPLICITY OF SUITS.

In such case, however, a federal court has jurisdiction to enjoin the board in order to prevent a multiplicity of suits in the several counties of the state.

5. SAME—AMOUNT IN CONTROVERSY.

The jurisdiction of the federal court will not be defeated in such case by the fact that the assessment will not amount to $2,000 in any single county, because, the action being against the board of appraisers, the whole amount to be certified is the amount in controversy.

This is a Suit in Equity to enjoin the assessment of a tax brought by the Western Union Telegraph Company, a corporation and citizen of New York, against the state auditor, attorney general, and state treasurer of Ohio. It now comes on for hearing on demurrer to the bill, and on a motion by complainant for preliminary injunction.

The main questions at issue are of the validity, under the federal and Ohio constitutions, of a law of Ohio known as the "Nicholls Law," imposing taxes on telegraph, telephone, and express companies. The bill avers that the complainant owns and operates lines of telegraph in nearly all of the states of

the Union, including Ohio, said lines consisting of poles with cross arms, supporting suitable wires, for the transmission of telegraphic messages by means of electricity, and employs thousands of men as officers and operators, clerks and messengers, together with line repairers and others. That on April 27, 1893, the legislature of Ohio passed a law for the taxation of telegraph, telephone, and express companies, which made defendants a board of tax appraisers for such companies, and directed them to value and assess the property of such companies as follows:

"Sec. 2778a. Every express, telegraph and telephone company embraced in section 2777, whether chartered by the laws of this state, or any other state or county, doing business in this state, shall, annually, between the first and tenth days of May, return to the auditor of state, under the oath of its treasurer, the amount of its capital stock, its place of business, the par value and market value (or if there be no market value, then the actual value) of its shares at the time of said return. The return shall also contain a statement in detail of the entire real and personal property of said companies and where located and the value thereof as assessed for taxation; and telegraph and telephone companies shall, in addition thereto, return the whole length of their lines and the length of so much of their lines as is without and is within the state of Ohio, which lines shall include what said telegraph and telephone companies control and use, under lease or otherwise; and said board of appraisers and assessors shall in determining the value of the property of said companies in this state, to be taxed within the state and assessed as herein provided, be guided by the value of said property as determined by the value of the entire capital stock of said companies, and such other evidence and rules as will enable said board to arrive at the true value in money of the entire property of said companies within the state of Ohio in the proportion which the same bears to the entire property of said corporation, as determined by the value of the capital stock thereof, and the other evidence and rules as aforesaid. Express companies shall in making said return, include therein as a part thereof a statement of their entire gross receipts for the year ending the first day of May, of the business done within the state of Ohio; giving the receipts of each office in said state and the location thereof for said year."

The bill further avers that complainant made a statement to the auditor, a copy of which is filed with the bill, showing the amount of its capital stock, and the market value thereof, so far as said market value could be shown, together with a statement of the location and value of its property in the state of Ohio, the number of miles of its telegraph lines in Ohio, and the total length of its lines everywhere. That, acting upon the information thus furnished, and under the requirements of the statute, and not in the exercise of their individual judgment of the valuation of the property of complainant, defendants made an appraisement and assessment against complainant of $2,011,000, wrongfully pretending that the sum is named as the value of complainant's property in Ohio. That, unless restrained by this court, the defendants, as such board, will certify this assessment, in accordance with the act, to the auditors of 87 counties in the state, wherein complainant's lines run, in the proportion of the mileage of lines in each county to the state mileage. That said auditors will, on receipt thereof, certify the same to the respective county treasurers for collection. That the rate of taxation in Ohio for the year 1893 varies, according to the county, from 2½ to 3 per cent., so that the aggregate assessment against complainant upon said illegal and excessive valuation will amount to between $50,000 and $60,000, and in several counties of the state not only the assessment, but the difference between the assessment under said law and an assessment upon a true and lawful valuation of complainant's property will exceed $2,000. That in truth the entire value of complainant's property in Ohio at all times in the year 1893 prior to and subsequent to May 1, 1893, does not exceed $647,000, and, estimated as all other property is for taxation in the state, would fall far below that sum. That complainant is the owner of lines of Atlantic cable extending to Cuba and England, and connecting in England with lines of other companies extending to all parts of Europe, and also of lines in Canada. That the total mileage of its lines is 189,576 miles, in-

cluding the mileage in Ohio, which is 8,272 miles. That the cash value of complainant's property cannot be ascertained approximately by applying the proportion which its lines in Ohio bear to the whole number of miles of its lines, upon a valuation of all the shares of its capital stock, because such a valuation includes elements of value not existing in Ohio, and not taxable within said state, and some of which are not taxable at all; and also because the lines are not of uniform value per mile, either as to gross or net income earned upon the various lines or as to cost of construction and maintenance. That included in the total mileage are thousands of miles of ocean cable, costing $4,000 per mile, while the lines per mile in Ohio cost but $103.60 per mile. That the income per mile in many states is much greater than in Ohio, and that the average income per mile in the entire system is much greater than that of the lines in Ohio. That the market price of complainant's stock affords no fair or reasonable or just method of forming an opinion as to the value of its property or of fixing a basis of value for the taxation thereof, because it is speculative and variable, dependent on conditions having no relation to complainant's business or property. That the actual value of complainant's shares is made up of property of various kinds in various states, of valuable contracts with railroad companies and other companies and individuals, of franchises conferred by act of congress of July 24, 1866 (14 Stat. 221), of franchises granted by other states and municipalities in them and by foreign governments, of business experience, good will, and skill employed in the prosecution of its business, of investments in bonds and stocks of other corporations aggregating $7,633,230.12, and real estate out of Ohio worth more than $5,000,000. That the tax proposed to be levied under the assessment sought to be enjoined would amount to 30 per centum of its earnings in Ohio from all its business in Ohio, including interstate commerce,—an unheard of rate of taxation, and substantially destructive of its business in said state. That the complainant's property in Ohio is of the simplest character, consisting only of poles, wires, office furniture, and instruments used in telegraphy. The bill avers that the law is void, because it does not require the valuation of the property of complainant and other companies according to its true value in money, as the property of all other corporations and individuals is valued for taxation, and as all property is required to be valued for taxation under the state constitution in Ohio, but directs a valuation according to the opinion of the board of appraisers as to the value of the capital stock of such companies, which is determined by the diligence, fidelity, and skill with which the business of said companies is conducted, by its good will, and by the property of said companies in many states, and by the general financial conditions existing in the country. "To the end, therefore, that the complainant may not be subjected to a multiplicity of suits which would otherwise be brought against it for the recovery of said assessment, to wit, suits in eighty-seven counties in which it does business in Ohio," a provisional injunction restraining defendants from certifying the said assessment to the various county auditors in which complainant does business, and, after final hearing, a perpetual injunction are prayed for.

Upon the filing of the bill, Judge Sage granted a temporary restraining order until a motion for a preliminary injunction could be made, heard, and disposed of. Defendants thereafter interposed a general demurrer to the bill. The motion and the demurrer came on for hearing. The court decided that the bill was defective, in that it admitted certain taxes to be due, without any averment that they had been paid; but allowed complainant a week in which to pay them, and to file an amendment showing such payment. The amendment was filed. A reargument was ordered on the merits. The minutes of the board, which accompanied the affidavit, showed its findings and final action with reference to complainant as follows: "That on the 1st day of May, 1893, the amount of the capital stock of said corporation, issued and outstanding, was $94,000,820. The par value of its shares was $100 each, and the market value of its shares on said day was $87 each. That the value of the entire capital stock of the company on said day was 940,008 1-5 shares at $87 a share, or $81,780,713.40. That there should be deducted from the value of the capital stock so found ($81,780,713.40) the value of the in-

vestments of the company in bonds and stocks of other corporations, being $7,633,230.12, and the value of the real estate owned by it outside of Ohio, being $5,013,326.64; making altogether $13,646,556.76; leaving $69,134,156.34, being the value of the entire capital stock of the company as based upon and represented by the lines of the company. That the whole length in miles of said company, both within and without the state of Ohio, was on the said day 189,576 miles, and the length of such lines in the state of Ohio was 8,272 miles. That the proportion of the entire value of the capital stock of said company employed in business in Ohio and represented by property taxable therein was on said 1st of May, 1893, 8,272-189,576 of $69,134,156.64, which equals $3,016,614.67. On consideration of the foregoing, the fact that property generally in Ohio is taxed at not more than two-thirds of its actual value, the statement in the return of the company that to reproduce the lines in this state will cost the sum of $1,649,279.10 (which the board regards as an insufficient estimate, and, at any rate, much below the existing value of said lines as an entirety), and other facts and evidence contained in the return of the company and otherwise brought to the attention of the board, on motion the board unanimously fix and determine the value of the property of the Western Union Telegraph Company in the state of Ohio to be assessed and taxed therein at the sum of $2,011,076.45." An affidavit of the state auditor was filed, showing that in no one county in the state would the tax to be collected from the Western Union under this assessment equal $2,000, and that the difference between the tax assessed and the tax admitted to be due was much less than that sum.

Brown & Wells and Ramsey, Maxwell & Ramsey, for complainant.
J. K. Richards, Atty. Gen., and Thos. McDougall, for respondents.

TAFT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first question for consideration is whether this court has any jurisdiction, as a federal court in equity, to grant the relief prayed in the bill. Section 5848 of the Revised Statutes of Ohio provides that suits may be brought to enjoin the illegal levy and collection of taxes and assessments. Section 5849 provides that actions to enjoin the illegal levy of taxes and assessments must be brought against the corporation and person for whose use or benefit the levy is made, and, if the levy would go on the tax duplicate of the county, the county auditor must be enjoined. These actions give the right to relief by injunction on the sole ground that the tax is illegal, enlarging in this respect the ordinary equitable jurisdiction to enjoin the levy or collection of taxes. The remedy thus afforded will be enforced in federal courts of equity (Cummings v. Bank, 101 U. S. 153), but, of course, its extent is limited by the statute which gives it existence. Now, it is obvious from section 5849 that the only persons against whom such an action can be brought to prevent the levy of a tax are the corporation or person beneficially interested in the proceeds of the tax and the auditor who takes the final steps in completing the levy by placing it on the duplicate. Jones v. Davis, 35 Ohio St. 474. These bills are not filed against either the corporations for whose use the tax will be collected or against the county auditors. The bill cannot be sustained, therefore, as invoking the special remedy afforded by the sections of the Ohio statutes above quoted.

Can they be sustained on the general equitable jurisdiction of the court? It is well settled that the mere illegality of a tax is no

ground for invoking equitable relief. Shelton v. Platt, 139 U. S. 591, 599, 11 Sup. Ct. 646. But we find, set up in the bills, a ground upon which courts of equity frequently grant relief, and that is, to avoid a multiplicity of suits. If the amounts assessed by the board are certified to the various county auditors, the complainant will be compelled to bring a suit, either to prevent collection of these taxes or to recover them back after paying them, in each one of 87 counties. This will be most oppressive, and would certainly seem to furnish ground for equitable interference by this court, unless other objections advanced by counsel for defendant, and now to be considered, must prevail.

It is first said that the injunction sought is premature, because against the valuers, and not against the collecting officers. If such a suit can be brought, then it is argued that a bill will lie to enjoin the legislature from passing the bill. This is a non sequitur, instead of a reductio ad absurdum. What is here sought to be enjoined is the certificate by the board of appraisers to the county auditors of the amounts to be assessed against plaintiff. The auditors are then, by law, required to place the same upon the tax duplicate, and deliver the duplicates to the county treasurers as warrants for the collection of the taxes. The duties of the county auditors and treasurers in this matter are wholly ministerial. The law reposes in them, no discretion whatever, to reduce or modify the assessment. It is said that the state auditor has power to correct all injustice in assessments for taxation, and constitutes a tribunal of review for the purpose. I cannot agree with this contention. It is true that, generally speaking, the state auditor is at the head of the taxing department of the state. By section 166 of the Ohio Revised Statutes he is required to instruct the auditors of the several counties in the state; and by section 167, which is the section chiefly relied on, his power is thus defined:

"He may remit such taxes and penalties thereon as he ascertains to have been illegally assessed, and such penalties as have accrued or may accrue in consequence of the negligence or error of any officer required to do any duty relating to the assessment of property for taxation or in the duplicate of taxes in any county; provided, that when the amount to be remitted in any one case shall exceed one hundred dollars, he shall proceed to the office of the governor and take to his assistance the governor and attorney general and in all such cases may remit no more than shall be agreed upon by a majority of the officers named."

I think this section does not confer any power on the state auditor, the governor, and attorney general, to correct assessments under the Nicholls law, which provides such special machinery for assessments as to prevent its application; otherwise the taxing system of Ohio would present the absurdity of subjecting the quasi judicial action of a board consisting of the state auditor and two others to the review of the state auditor alone in every case where the assessment does not exceed $100, and in cases involving more than $100 would make a majority of the reviewing court to consist of the majority of the court of first instance. The action of the board of appraisers in certifying the assessments to the county auditors is, therefore, a finality.

It is suggested that there is the possibility that the county auditor and county treasurer may refuse to comply with the duty imposed by an unconstitutional law. Certainly these county officers are not tribunals established to consider constitutional questions, before whom complainants could be heard. The presumption is that they will obey a law which was in due form passed by the legislature, and will assume its validity, especially when it has been treated as valid by the head of the taxing department and the head of the law department of the state. The possibility suggested is too remote, to prevent a court of equity from properly treating the certificate of the board of appraisers, as a final step, directly to the prejudice of the complainants, with no taxing tribunal or authority to whom it can appeal in the procedure provided by the law, before the tax is to be collected. The supreme court of Ohio in Jones v. Davis, 35 Ohio St. 474, did not hold that a proceeding to enjoin a board of equalization from certifying an assessment to the county auditor was premature. They only held that a proceeding to enjoin the auditor before he had added the assessment to the duplicate was not too late, because, until that time, he had not completed his levy, which section 5849 of the Ohio Revised Statutes gives the taxpayer, a special remedy against him to enjoin. Of course, the complainant here, under section 5849, might bring actions to enjoin the county auditor or county treasurer of each county from levying or collecting these assessments, but then the multiplicity of suits would be an accomplished fact, and the basis for general equity jurisdiction in the matter would have disappeared. It is said that the equity jurisdiction to prevent a multiplicity of suits is never exercised except against those who are about to bring the suits. No case is cited which makes this distinction, and I do not see any good reason for it.

Again, it is urged that the affidavits filed show conclusively that in no single county will the assessment against the complainant amount to $2,000; wherefore the argument is that the jurisdiction of this court cannot be supported by adding together the amounts due in each county. If my conclusion is correct, that this action will lie against the board of appraisers, there is nothing whatever in this objection, because the amount involved in controversy in the suit is the whole amount to be certified by the board under the law, less the aggregate amount which the complainant must pay in the various counties of Ohio, under such laws as are in force if the Nicholls law is not valid. That difference admittedly exceeds $2,000. For this reason, I am of the opinion that the bill does present a case for equitable relief in a federal court.

Another reason advanced by counsel for defendants, why the relief prayed for should be denied, is that the complainant has only tendered or paid to the various county treasurers the amounts due on the valuation of their real and personal property as it claims it to be, according to the local rates of taxation, but has not tendered or paid the amount due on its gross receipts for business within the state of Ohio, as provided by the law, which the Nicholls law

was passed to supplant, and which is in force, if the Nicholls law is invalid. This objection I shall defer considering until later.

The Nicholls law purports to tax only the real and personal property owned by telegraph, telephone, and express companies in Ohio. The gist of the act is contained in the following sentence, found in the latter part of section 2778a:

"And said board of appraisers and assessors shall in determining the value of the property of said companies in this state, to be taxed within the state and assessed as herein provided, be guided by the value of said property as determined by the value of the entire capital stock of said companies and such other evidence and rules as will enable said board to arrive at the true value in money of the entire property of said companies within the state of Ohio, in the proportion which the same bears to the entire property of said corporation as determined by the value of the capital stock thereof, and the other evidence and rules as aforesaid."

The validity of the foregoing method of valuation, so far as complainant is concerned, depends on the correctness of two propositions. The first is that the telegraph plant in one state has an added money and taxable value as a plant in that state, because it is physically a part of a great system or machine covering the country. This is substantially the same principle as that involved in the taxation of interstate railroads in Ohio, which has met the approval of the state supreme court (Insurance Co. v. Ratterman, 46 Ohio St. 153, 166, 19 N. E. 560), and its soundness may therefore be conceded. See, also, State Railroad Tax Cases, 92 U. S. 575.

The second proposition is that the market value of the aggregate shares of the capital stock of telegraph, telephone, and express companies is a proper guide in fixing the true value in money of their real and personal property in Ohio in constitutional uniformity with the mode of assessing the real and personal property of individuals and other corporations. The language of the legislature is by no means clear in defining the method of valuation, but this much is certain: that the board are enjoined, unless exceptional circumstances require otherwise, to consider the value of all the shares of the capital stock as a basis or controlling element in estimating the value of the real and personal property of the corporation. The capital stock is the only element of value specifically mentioned, and that occurs twice in the same involved sentence. Other evidence and rules are referred to, but they are left to the board to select or adopt. The one thing which the board is required to consider in each case is the value of the capital stock. It is true that the board may exercise a discretion in their appraisement to give more or less evidential weight to the value of the capital stock. But here is the legislative declaration that in every case such value must be considered, and the necessary implication is that it is an important element. The object of this clause was to increase the valuation of the property of corporations above that which it would have, without reference to the capital stock. The two laws which the Nicholls law supplanted in the taxation of foreign telegraph and express companies imposed a tax upon all the real and personal property owned by those corporations in Ohio, and also a tax, decided to be a franchise tax, measured by a percentage

of the gross receipts from business done within Ohio. Rev. St. Ohio (Smith & Ben.) §§ 2744, 2778; Telegraph Co. v. Mayer, 28 Ohio St. 521; Ratterman v. Telegraph Co., 127 U. S. 411, 8 Sup. Ct. 1127. Now, we may take judicial notice of the commendable efforts of the legislature of Ohio, in view of the condition of the state treasury for a number of years past, to increase the taxable sources of revenue, and we may reasonably infer that it was not the legislative intent to reduce the tax upon telegraph companies or any other foreign or domestic corporation. When, therefore, for a tax upon all the personal and real property of such companies, assessed without reference to the value of the capital stock, and a franchise tax as well, there is substituted a tax upon the property of the corporation in Ohio on a valuation to be determined, in part at least, by the aggregate value of the shares of its capital stock, we must necessarily infer that this basis of valuation is expected to add substantially to the valuation of the same property when made without reference to such a standard. Convincing evidence is found that this construction of the law is sound in the result of the valuations under the new law as compared with those under the old, and the course taken by the board in every case which has come to the notice of the court. In each, the board began with the market value of the capital stock, and made its deductions from that to reach the value of the property. The intrinsic or cost value of the property seems to have been lightly regarded as compared with the market value of the capital stock. Now, it is true that what the appraisers have done does not necessarily determine the meaning of the law, but it is persuasive of the intent of the legislature. We are led, by this construction of the Nicholls law, to consider what necessary relation, if any, there is between the market value of the capital stock of the companies embraced within its terms and the true value in money of their property as it may be assessed for taxation in Ohio. A share of stock entitles its owner to a proportionate share in the net earnings of the corporation, and, upon dissolution, to a proportionate share in the assets of the corporation after the debts are paid. Its value in a corporation whose corporate life is not limited by its charter depends almost wholly on the net earnings of the corporation or on its prospective capacity for producing them. · The aggregate market value of the stock of any business corporation therefore approximates an amount reached by capitalizing the aggregate annual dividends, on a basis of something higher than the usual rate of interest for money loaned, the rate varying, as interest of money loaned varies, with the risk of the investment and the certainty of the annual payments. The annual earnings of a business corporation depend, not on the value of the visible, tangible property of the corporation as a passive investment, like real estate or government bonds or mortgages, but they depend on the good will of the business, its volume, the speed with which the money capital can be turned over, the business skill and experience and economy of its management. The share of stock is property. It is a chose in action, entitling its owner to yearly payments from a corporation, if there are net earnings. But the elements that are united

to produce those earnings are not all, or a majority of them, in the form of tangible property, though it may be conceded that they were acquired by investing tangible capital. A corporation does not own its capital stock, divided into shares. It owns the property which, when used in a business with skill and industry, aided by the good will, owned perhaps long before the particular property was ever purchased, will produce the net earnings, out of which the dividends on the stock are to be paid. This is true of all active business corporations, including telegraph companies, just as it is true of individuals in business, that their annual profits are the result, not of their real estate, business plant, and merchandise only, but of those things united with the good will and the skill, experience, and economy used in the conduct of the business. Now, it certainly could not be said that the annual profits of a dry goods store capitalized on a basis of 6 per cent. would afford any proper guide to the value of the real estate, the merchandise, and the ready capital used in the business. Where the property earns the money as real estate earns rent, or as money loaned earns interest, the earnings do determine very largely the value of the property; but where, as in a business of an individual or a corporation, the investment is active, instead of passive, there is no necessary relation between the value of the tangible property and the earnings. Would any one claim that the value of the presses, type, press franchises, money capital, and office furniture and other tangible property of a newspaper could be determined by its net earnings, or, if it be a corporation, by the market value of its capital stock? Clearly not. And why? Because nearly all its capital has been expended in securing circulation and advertising patronage, or, in other words, good will. This is an extreme example, it is said. Take a bank. There is no business in which the capital invested is kept more nearly in the form in which it was, when invested, than in that of banking, and yet it is well known that the assets of a bank are often much less in value than the profits of the business capitalized at the usual rate of interest. Would the fact that the shares in a banking corporation with a capital stock of $100,000 were selling at $150 each on a par value of $100 be any evidence that the bonds, choses in action, and money and other resources in the vaults of the bank were worth any more than they appear to be on an appraisement without reference to the value of the bank's capital stock? Certainly not. The increase in the value of the bank's capital stock over its resources is due to the good will which invites the confidence of the public in the honesty and prudence of its management, and attracts deposits and business, and to the skill and experience and foresight of its officers in making profitable and safe loans. What is true of a newspaper, a bank, and a dry goods store is equally true of a telegraph company. As averred in the bill, its earnings, and, therefore, the value of its capital stock, is largely dependent on its good will, the honesty, skill, economy, and experience of its management and its employes, added to its property. Its net earning capacity is also affected by business arrangements with railroad companies, and by municipal concessions of the right

to use roads and streets. It seems clear to me that the market value of its capital stock has no necessary or proper relation to the value of the tangible property of the company. If it has, then the earning capacity of a dry goods store should be an element in valuing its capital and merchandise; the profits of a newspaper, in reaching the assessable value of its presses, plant, and ready capital; the profits of a bank, in deciding upon the value of the bonds and bills receivable and money in its vaults.

Now, it is true that the capital stock of a corporation represents, and is a measure of, the tangible and intangible factors of value which unite to earn dividends, and therefore of those factors in which the original capital of the company was invested. The enjoyment of both factors by the owner is protected by the state, and both may, in the absence of any constitutional restriction, be subjected to taxation. The aggregate market value of the shares of stock in the company is as good a measure of their united value for purposes of taxation as it is possible to find. The legislatures of some states have taxed the capital of a corporation, as invested in both the tangible and intangible factors of profits, by reference to the market value of its capital stock. In such states, it is permissible to tax the property of corporations by a different rule from that of individuals, and it is no objection to including in the value of the property or capital of a corporation the good will of the business, even if such an element of earning capacity is not taxed, when enjoyed by individuals. But such is not the rule in Ohio. Article 12, § 2, of the constitution of Ohio declares that "laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint stock companies or otherwise; and also all real and personal property according to its true value in money." In construing this provision the supreme court of the state has decided that:

"Taxing by a uniform rule requires uniformity not only in the rate of taxation, but also uniformity in the mode of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without uniformity in the mode of assessment, as well as in the rate of taxation. * * * It must be extended to all property subject to taxation, so that all property must be taxed alike equally, which is taxing by a uniform rule." Bank v. Hines, 3 Ohio St. 15.

If, therefore, we find that good will and those other intangible factors of the value of the capital stock of a business corporation are neither taxable as property themselves, under the Ohio laws and constitution, nor as an increment to the value of the tangible property of a corporation, or an individual in business, then an Ohio law which requires the value of the capital stock to be a guide in determining the value of the tangible property of a small class of business corporations must be wanting in that uniformity which the constitution enjoins in tax laws, and is therefore void.

It becomes necessary, then, to examine the tax laws of Ohio as they tax the property of other corporations and individuals, with the view to determine whether good will, business skill, economical management, and the other intangible sources of net earnings and factors of stock value are taxed against other corporations and

individuals directly, or by increasing the valuation of tangible property. The subjects of taxation as property are mentioned in article 12, § 2, quoted above, as "all moneys, credits, investments in bonds, stock, joint stock companies or otherwise; and also all real and personal property." The legislature defined the meaning of the various terms used in the constitution in section 2730, and with one exception—that of "credits"—we may well assume that the section is a proper construction of the constitution. The section defines real estate to be not only lands and buildings and fixtures, but all rights and privileges belonging or in any wise appertaining thereto. Investments in stocks are defined to be all moneys invested in the capital or stock of a corporation the stock of which is or may be divided into shares, transferable by each owner without the consent of the other stockholders, for the taxation of which no special provision is made by law, held by persons residing in this state. Personal property is defined to be every tangible thing which is the subject of ownership, whether animate or inanimate, other than money, and not forming part of any parcel of real property as before defined; and the capital stock, undivided profits, and all other means not forming part of the capital stock of every company, whether incorporated or unincorporated, interests in ships and boats, and money loaned on real estate security. Credits are defined to be the excess of the sum of all legal claims and demands, whether for money or other valuable thing, or for the labor or service due or to become due to the taxpayer, estimated at its true value in money over and above the legal debts due by him. This definition, as already stated, is not in compliance with the constitution, because it permits a reduction of the sum of legal demands of the taxpayer by the legal debts due from him; but otherwise the constitutionality of the definitions of the section has not been questioned. Bank v. Hines, 3 Ohio St. 1. Now, it seems clear that the good will of a business, and the other intangible factors of business earnings, are not included in these definitions of personal or real property, or of the other terms describing the kinds of property to be taxed under the constitution. It would certainly cause a surprise and shock to the business community of Ohio, to have it decided that it is the duty of every business firm and corporation to return for taxation the estimated value of its good will, and the estimated value of the skill and experience and economical management of the employer and employed, or to use such factors of his profits to increase the taxable valuation of his tangible business capital. Section 2731, Rev. St. Ohio, subjects all property as it is described in section 2730, whether belonging to individuals or corporations (except certain exempted property), to taxation. Sections 2734–2738 make provisions for the listing by persons of all their personal property, moneys, credits, and investments in bonds, stocks, and otherwise. Section 2739 prescribes the rules for valuing property of persons as follows:

"In listing personal property it shall be valued at the usual selling price thereof, at the time of listing and at the place where the same may then be; and if there be no usual selling price known to the person whose duty it is to fix a value thereon, then at such price as it is believed could be obtained

therefor, in money, at such time and place; investments in bonds, in stocks, joint stock companies, or otherwise, shall be valued at the true value thereof in money; money whether in possession or on deposit shall be entered in the statement at the full amount thereof, except that depreciated circulating notes shall be entered at their current value; every credit for a sum certain payable either in money, property of any kind, labor or service, shall be valued at the full amount of the sum so payable, except that if it be for a specific article or for a specified number or quantity of any article or articles of property or for a certain amount of labor or services of any kind it shall be valued at the current price of such property or of such labor or service at the place where payable; and annuities or moneys receivable at stated periods, shall be valued at the sum which the person listing the same believes them to be worth in money at the time of listing."

· Merchants and manufacturers are required to pay, not upon the stock of merchandise which they have on a certain day in the year, but they are required to average the value of their stock on hand each month of their business, and pay tax on that as personal property. In other respects their returns are like those of other persons. Section 2744 prescribes the ordinary mode of assessing the taxable property of all corporations except banking corporations in the state of Ohio, whether organized in this state or not. It requires their chief officers to list for taxation—

"All the personal property which shall be held to include all such real estate as is necessary to the daily operations of the company, money and credits of such company or corporation, at the actual value in money, in manner following: In all cases return shall be made to the several auditors of the respective counties where such property may be situated, together with a statement of the amount of said property which is situated in each township, village, city, or ward therein. The value of all movable property shall be added to the stationary and fixed property and real estate and apportioned to such wards, cities, villages or townships, pro rata, in proportion to the value of the real estate and fixed property in said ward, city, village, or township, and all property so listed shall be subject to and pay the same taxes as other property listed in such ward, city, village or township."

Section 2740 requires all personal property of every description, moneys and credits, investments in bonds, stocks, joint-stock companies, or otherwise, to be listed in the name of the owner thereof on the day preceding the second Monday of April in each year, but provides that no person shall be required to list for taxation any share or shares of the capital stock of any company the capital stock of which is taxed in the name of the company. The property of railroad companies is assessed for taxation as a unit. The road-bed, the equipment, the money, and choses in action are added together, and the value distributed according to mileage through the counties of the state and between Ohio and adjacent states. Unincorporated banks are taxed on their assets less their liabilities. Incorporated banks are not taxed at all, but their stockholders are taxed, under section 2762, upon their shares on a valuation based on the resources of the bank. It is very manifest from this review of the provisions for assessing the taxable value of the tangible property of individuals and corporations in business that neither the profits of the business nor the good will nor those other intangible factors in the earnings of profits are required to be considered, and it is very certain that they never are considered.

The difference between the taxable value of the property of a corporation and the value of its shares was considered by the supreme court of Ohio in Insurance Co. v. Ratterman, 46 Ohio St. 153, 19 N. E. 560. The question in the case was whether shares of stock in a foreign railroad corporation, which paid taxes on a large amount of property in Ohio, but also had much property elsewhere, were returnable for taxation in the hands of their owners. The holders sought exemption under that proviso of section 2746, Rev. St. Ohio, already quoted, which exempts holders of shares of stock from returning them when the corporation pays taxes on its "capital stock" in Ohio. The words "capital stock," as there used, had been construed to mean all, or substantially all, the property of a corporation. The claim of the stockholders was denied. In meeting the argument that to tax the shares in the hands of the stockholders and the property of the corporation, too, was double taxation, Judge Spear, at page 162, 46 Ohio St., and page 560, 19 N. E., in the course of an able opinion, used this language:

"The corporation is the legal owner of all the property of the company, real and personal; and within the powers conferred upon it by its charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own. The interest of the shareholder entitles him to participate in the net profits in proportion to the number of his shares, to have a voice in the selection of officers, to manage the business of the company in like proportion, and, upon its dissolution, the right to his proportion of the property of the corporation that may remain after payment of its debts. This is a distinct, independent interest or property, held by the shareholder like any other property that may belong to him; is under his sole control, so that he may sell or hypothecate it. He is entitled, from net earnings of the corporation, to dividends upon his stock; and the value of the stock depends largely upon its capacity for earning dividends. The shares of stock may be worth much more than the property of the corporation,—that is, the franchise may be very valuable, while the visible capital may be of but little value, and dividends may be greatly out of proportion to the tangible property,—as frequently occurs in regard to street railroads, gas companies, electric light companies, etc. Farrington v. Tennessee, 95 U. S. 686, 687; Watson v. Spratley, 10 Exch. 236; People v. Commissioners, 4 Wall. 244; Union Bank v. State, 9 Yerg. 490; Cook v. City of Burlington, 59 Iowa, 251, 13 N. W. 113. It follows from this that, although the shareholder may be affected, as regards the extent of his dividends, by taxation of the property of the corporation, yet a tax on the shares is not a tax on the capital of the company, and e converso a tax on the capital is not a tax on the shares held by the stockholders. Taxation of the capital and property of the corporation, though it be accepted by the state as an equivalent for, is not the same as, a tax on the shares."

In the case of Miller v. Bank, 46 Ohio St. 424–428, 21 N. E. 860, Chief Justice Minshall did say:

"A share in the bank is but a fractional part of its capital owned by one who contributed an equivalent part of the capital, or his transferee; and the aggregate of all the shares held by individuals in a bank is equal to the aggregate of its capital. So that, if all the shares in a bank were assessed for taxation in its name, and payment of the tax required of it, the effect would be precisely the same as a tax upon the aggregate capital of the bank."

This statement was true, because, under the law for assessing the value of the shares of the bank, the auditor did not take their market value, but he found the value of each share by adding all the

property of the bank and money and other resources together, and dividing by the number of shares. The words quoted have, therefore, no application to the relation of the market value of shares to the visible capital even in a bank, and still less to that in a trading corporation.

It is clear, for the reasons stated, that the market value of the shares of capital stock in the complainant and other like companies bears no necessary relation or proportion to the value of the tangible property in Ohio or elsewhere; that the market value of the shares depends on elements of value not taxable in Ohio, and not used to determine the value of the taxable property of individuals or other corporations. If so, it seems necessarily to follow that it is prescribing an unconstitutional rule for the valuation of the property of telegraph, telephone, and express companies to enjoin upon the appraisers of their property, as the Nicholls law does, to consider, as an important element increasing the valuation of their property, the value of the aggregate shares of the capital stock of those companies. The bill avers that the amount assessed against the complainant is three times the real value of its property in Ohio. The affidavit of the state auditor shows that the mode of reaching the value of the property of the telegraph company in Ohio was to reduce the total market value of all the shares by the real estate out of Ohio and the stocks and bonds in the treasury of the company, and to take the remainder as the value of the lines of the company, reaching the part of that value in Ohio by using the ratio of the mileage of the lines in Ohio to their total mileage. This appraisement was not an appraisement of the property of the company in Ohio at all. The board entirely ignored the fact that in this result' was included the good will of the company, the valuable and economical arrangements with railroad companies for joint use of lines, the public concessions by which streets and roads are occupied, the skill and experience of the employes, none of which are taxable under the laws of Ohio, but all of which contribute, as the bill avers, in a large degree to the net earnings upon which the market value of the capital stock is based. Tax by such a measure of value is an income tax, and not a property ad valorem tax. It is true that the $3,000,000, which, by the mode of valuation just described, the board reached as the actual value of the property in Ohio, was reduced to $2,000,000, to accord with the unconstitutional and unlawful practice prevailing among assessing officers in this state of valuing not at the true value in money but at two-thirds that value. That reduction, however, does not remove the illegality in such a valuation of the property caused by the assumption that a telegraph company's property in the sense of the Ohio constitution is equal to the market value of its capital stock.

But it is said that I am wrong in construing the Nicholls law to require, as an important and controlling element in the valuation of telegraph property, the market value of capital stock of the company, and that it is my duty as a judge to sustain the law if it can be done by construction. For the reasons I have given, I do not think that the market value of the shares of capital stock has

any legitimate effect in increasing the value of the tangible and visible property of this telegraph company in Ohio. It does not help the law any, to point out that the market value of the stock is only to be used to determine the true value in money of the company's Ohio property; and that if, in fact, the value of stock should have no effect in the estimate, we must give controlling weight to the words which embody the standard of value fixed by the constitution. The board is enjoined to determine the value of the property to be taxed by using as a guide the value of the capital stock and other rules which shall enable them to fix, not the true value in money of the company's property, but its true value in money in proportion to the entire property of the company as determined by the capital stock and other rules. In other words, it is merely a legislative declaration that the true value in money of the entire property of the company is determined by the entire capital stock of the company and other rules, and the true value in money of the Ohio part is merely a proper proportion of the value of the entire property thus determined. The only construction which would eliminate the error of the law is one which would require the board to ignore the market value of the shares as an element of value. If this were a possible construction (as I think it is not), the result in this case would not be different, for the present assessment would have to be enjoined as not authorized by law. Certain it is, that courts will not permit injustice to be done to a class of taxpayers by a law which is so worded as to mean one thing to the courts when its validity is attacked, and another thing to the taxing officers when they come to enforce it. Either the law means what the officers construe it to mean, and its validity is to be tested on that construction, or they are to be enjoined from enforcing it except as the courts shall construe it. Cummings v. Bank, 101 U. S. 153.

Much stress has been laid on two cases decided by the supreme court of the United States, cited in support of this law. The first —that of W. U. Tel. Co. v. Attorney General of Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961—was a suit for taxes by the attorney general of Massachusetts against the telegraph company under the general law of the state. By that law, all corporations chartered by the state were required to return the market value of the aggregate shares of their capital stock and all their works, structures, real estate, and machinery subject to local taxation without the state. Railroad and telegraph companies were required to return the whole length of their lines, and the length of them without the state. Every corporation was required to pay what in the law is called "a tax upon its corporate franchise at a valuation thereof equal to the aggregate market value of the shares in its capital stock," after deducting in the case of railroad and telegraph companies whose lines extended beyond the limits of the commonwealth such portion of the whole valuation of their capital stock, ascertained as aforesaid, as was proportional to the length of that part of their line lying without the commonwealth, and also an amount equal to the value of their real estate and machinery located and

subject to local taxation within the commonwealth, and after deducting in the case of other corporations an amount equal to the value of their real estate and machinery subject to local taxation wherever situated. By another section these provisions were made applicable to a foreign telegraph company. The answer of the telegraph company denied the right of the state to tax its corporate franchises received from another state, and made. its chief defense that such a tax was really a tax upon the franchises received by it from the United States government, by virtue of which it was given the right to occupy all the post roads in the state as an agent of the government and for interstate commerce, and that, even as a tax upon its franchise, it was unfair, because it did not deduct from the market value of its entire capital stock the real estate owned by the company in other states; but there was no averment or evidence to show that the value of the company's property in the state was less than the amount assessed against it. The supreme court gave most of their consideration to the defense founded on the fact that the company was enjoying a franchise from the United States government, holding that, though this prevented the state from excluding the company, from post roads, it did not prevent the state from taxing their property. The court upheld the tax as a tax against the corporation on account of the capital owned and used by it in the state of Massachusetts. The discussion is summed up by Mr. Justice Miller as follows (125 U. S. 552, 8 Sup. Ct. 961):

"The tax in the present case, though nominally upon the shares of the capital stock of the company, is, in effect, a tax upon that organization on account of property owned and used by it in the state of Massachusetts; and the proportion of the length of its lines in that state to their entire length throughout the whole country is made the basis for ascertaining the value of that property. We do not think that such a tax is forbidden by the acceptance on the part of the telegraph company of the rights conferred by section 5263, Rev. St., or by the commerce clause of the constitution. It is urged against this tax that in ascertaining the value of the stock no deduction is made on account of the value of real estate and machinery situated and subject to local taxation outside of the commonwealth of Massachusetts. The report of Examiner Fiske, to whom the matter was referred to find the facts, states that the amount of the value of said real estate outside of its jurisdiction was not clearly shown, but it did appear that the cost of land and buildings belonging to the company, and entirely without that state, was over three millions of dollars. In the statement of the treasurer of the company, it is said that the value of the real estate of the company within. the state of Massachusetts was nothing. Since the corporation was only taxed for that proportion of its shares of capital stock which was supposed to be taxable in that state, on the calculation above referred to, and since no real estate of the corporation was owned or taxed within its limits, we do not see why any deduction should be made from the proportion of the capital stock which is taxed by its. authorities. But, if this were otherwise, we do not feel called upon to defend all the items and rules by which they arrived at the taxable value on which its ratio of percentage of taxation should be assessed; and, even in this. case, which comes from the circuit court, and not from that of the state, we think it should appear that the corporation is injured by some principle or rule of the law not equally applicable to other objects of taxation of like character. Since, therefore, this statute of Massachusetts is intended to govern the taxation of all corporations therein, and doing business within its territory, whether organized under its own laws or those of some other state, and since the principle is one

which we cannot pronounce to be an unfair or an unjust one, we do not feel called upon to hold the tax void, because we might have adopted a different system had we been called upon to accomplish the same result. It is very clear to us, when we consider the limited territorial extent of Massachusetts, and the proportion of the length of the lines of this company in that state to its business done therein, with its great population and business activity, that the rule adopted to ascertain the amount of the value of the capital engaged in that business within its boundaries, on which the tax should be assessed, is not unfavorable to the corporation, and that the details of the method by which this was determined have not exceeded the fair range of legislative discretion. We do not think that it follows necessarily or as a fair argument from the facts stated in the case that there was injustice in the assessment for taxation."

The Massachusetts case has no application whatever to the question we are now considering under the state constitution. The question which the court had there to consider was whether the mode of assessing the value of the company's property was unfair in two respects: Was it unfair with respect to the mode of assessment against like property in Massachusetts held by other corporations? Second. Did it include in the valuation against the telegraph company anything not within the taxing jurisdiction of Massachusetts? As to the first question, the court found that by general law the state taxed all corporations on the difference between the assessed value of the tangible property subject to local taxation and the market value of the shares of the capital stock. This, though in name a tax on the franchise, was held to be a tax on the capital of the corporation used in its business. The property, as thus valued, of course included the element of the good will in Massachusetts, the skill and economy of the local management, and local franchises which the money capital of the corporation had been invested to secure. The elements of value were all within the taxing jurisdiction of Massachusetts, and, as they were taxed as capital against the corporations of Massachusetts, there was no reason why they should not be taxed as such against foreign corporations whose enjoyment of the same things of value were protected by the law of the state.

The question in the case at bar is whether the mode of valuing complainant's property under the Nicholls law is within the meaning of article 12, § 2, of the Ohio constitution, according to its true value in money, and uniform with the valuation of other property taxed in the state. I have tried to show that the valuation for taxation of property used in business in Ohio by including as an element of its value the good will of the business, and the other things, not property, which unite to earn profits, is not the mode prescribed for the valuation of any property except that of the companies covered by the Nicholls law, and is presumably, therefore, not a method of assessing according to its true value in money as enjoined by the Ohio constitution. In the case of Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, the tax which was disputed was in terms a tax upon the capital stock of the company, which owned 100 cars or more, passing constantly into, through, and out of the state of Pennsylvania. The amount of the tax was determined by taking that proportion of the entire

capital stock of the company which the number of miles operated by its cars in Pennsylvania bore to the total mileage operated by the company. The court below sustained the tax as levied upon that part of the capital stock invested and used in Pennsylvania. No complaint was made by the company that the amount taxed exceeded the value of the company's capital invested in property which was at times within the taxing jurisdiction of Pennsylvania. The sole question was whether the tax based on the mileage of the cars which were engaged in interstate commerce was not a tax on interstate commerce. The discussion was as to the situs of the cars. There is no constitutional limitation in Pennsylvania, as there is in Ohio, which requires the property of corporations to be taxed in the same way as that of individuals, and which prevents the valuation of their taxable property on a different scale from that of individuals. The Pennsylvania case is quite as inapplicable to the case at bar as the Massachusetts case, and for the same reasons.

A strong argument has been made to show that the companies embraced within the Nicholls law are of a peculiar class, and that, therefore, special rules for the assessment of their property are not a departure from true uniformity in taxation. The case of Express Co. v. Seibert, 142 U. S. 339, 12 Sup. Ct. 250, is cited to this point. In that case the question was whether a tax upon the gross receipts of an express company was violative of section 3, art. 10, of the constitution of Missouri, which required taxes levied to be "uniform upon the same class of subjects within the territorial limits of the authority levying the tax," when such a tax was not imposed on railroad companies. It was held that there was no lack of uniformity in the discrimination between the two classes of corporations because of the inherent difference in the manner of conducting their business. Mr. Justice Lamar, speaking for the court, said on page 351, 142 U. S., and page 250, 12 Sup. Ct.:

"This court has repeatedly laid down the doctrine that diversity of taxation, both with respect to the amount imposed and the various species of property selected either for bearing its burdens or for being exempt from them, is not inconsistent with a perfect uniformity and equality of taxation in the proper sense of those terms; and that a system which imposes the same tax upon every species of property, irrespective of its nature or condition or class, will be destructive of the principle of uniformity and equality in taxation, and of a just adaptation of property to its burdens."

That this is true as to an economic principle, and that it is equally true in considering the question whether the enforcement of a tax against any property by a state is the denial of the equal protection of the laws secured by the fourteenth amendment to the federal constitution, must, of course, be conceded; but that it is true as constitutional law in Ohio must be denied. The constitution of Ohio does impose the same tax on every species of property, as therein defined, according to its true value in money. The constitution of Missouri permitted the classification of property and diversity of taxation on the different classes. The Ohio constitution does not. Speaking of the differences between railroad and steamboat companies and express companies, Mr. Justice Lamar said, in the same case:

"The vital distinction is this: Railroad companies pay taxes on their roadbeds, rolling stock, and other tangible property, as well as generally upon their franchise; and steamboat companies likewise pay tax on their tangible property. This tax is not necessarily an ad valorem tax at the same rate as is paid on other private property in the state belonging to individuals. Generally, indeed, it is not, but is often determined by other means, and at different rates, according to the will of the legislature. Kentucky Railroad Tax Cases, 115 U. S. 321-337, 6 Sup. Ct. 57. On the other hand, express companies such as are defined by this act have no tangible property of any consequence subject to taxation under the general laws. There is, therefore, no way by which they can be taxed at all, unless by a tax upon their receipts from business as transacted."

No one can read this passage without seeing that the learned justice was dealing with a state constitution very different from that of Ohio. It is true that a tax on gross receipts of a foreign telegraph company has been sustained in Ohio (Telegraph Co. v. Mayer, 28 Ohio St. 521), not as a tax on property, but as a tax on a franchise, which is not property in Ohio (Bank v. Hines, 3 Ohio St. 1). Whenever property is taxed in the latter state, whether it be the property of a railroad, a steamboat, or an express company, it must pay the same tax according to its true value in money. It needs no argument to establish that telegraph companies, express companies, and telephone companies conduct a business yielding very large profits in proportion to the tangible property owned by them, and that the protection which they enjoy from the government of the state requires and justifies the imposition of taxes upon them greatly in excess of the general rate per cent. on their taxable property assessed at its true value in money, as required by article 12, § 2, of the constitution of Ohio; but it does not justify the fictitious valuation of their property for taxation in violation of that section. The inequality must be remedied by taxes based on something other than property, and this brings us to another argument on behalf of defendants.

It is said that if the tax imposed by the Nicholls law cannot be supported as a property tax it may be supported as a tax upon the franchise of the corporation to do business as such in Ohio, or as a tax upon its business in the state. The question of the power of the legislature of Ohio, under its constitution, to tax franchises or business has been much mooted, and in the language of some of the earlier decisions the power was expressly or impliedly denied, but an examination of the later decisions of that court seems to me to leave no doubt that by a proper construction of the constitution such a power is vested in the general assembly. Article 2, § 1, of the constitution provides that the legislative power of this state shall be vested in a general assembly, which shall consist of a senate and house of representatives. By this section it has been held that the taxing power was conferred on the general assembly, subject to such limitations as are thereafter imposed in the constitution. Article 12, § 2, enjoins the legislature to pass laws taxing by a uniform law all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise, and also all real and personal property. The effect of this is only to limit the character of the law which the legislature may pass when taxing that which is property

within the terms used in that article. It has no effect to limit the character of a law passed to tax business or franchises, nor does it take away the power to tax them conferred by the general grant of legislative power. In Telegraph Co. v. Mayer, 28 Ohio St. 533, a tax upon the gross receipts of the complainant company was sustained as a tax upon the privilege it enjoyed of doing business and exercising its corporate franchise within the state. This decision has never been reversed or questioned as far as the state question is concerned, and fully establishes the right contended for by counsel for the state. See, also, Baker v. Cincinnati, 11 Ohio St. 540, 543; Adler v. Whitbeck, 44 Ohio St. 565, 9 N. E. 672; Anderson v. Brewster, 44 Ohio St. 585, 9 N. E. 683; Marmet v. State, 45 Ohio St. 68, 12 N. E. 463; State v. Reinmund, 45 Ohio St. 214–218, 13 N. E. 30; Ashley v. Ryan, 49 Ohio St. 504, 31 N. E. 721.

While, therefore, the power of the legislature to tax the privilege of the telegraph company to exercise its corporate franchise in Ohio must be conceded, I cannot see how it is possible to construe and enforce the Nicholls law as one taxing the franchise or the business of the company, or as one taxing the property and franchise and business of the company all together, because the law fixes no definite mode of ascertaining the amount of tax to be imposed for franchise and business, but leaves the amount above the intrinsic value of the property to be fixed at the discretion of the board of appraisers. It may be conceded that strict uniformity in a franchise or business tax as to different classes of corporations is not necessary, because the power is not controlled by article 12, § 2; yet it is certain that the legislature cannot delegate to a board of appraisers to determine how much shall be imposed on any corporation or class of corporations as a franchise or business tax. Had this law fixed exactly the amount of tax to be paid, by fixing the value to be assessed as a certain proportion of the capital stock, it could not, as I have attempted to show, be held valid as a property tax; but it would be a question whether it might not be supported, under the state constitution, as a property and franchise tax together (see suggestion by Judge Johnson in Telegraph Co. v. Mayer, 28 Ohio St. 531–540), or as a franchise tax only. In the Mayer Case, the amount of the tax was certainly fixed by the gross receipts and the rate per cent. of property tax in each county. But here the board is enjoined to value property, and consider as an element in the value of it that which has no necessary relation to its value as such, and which, in view of laws taxing other property, cannot constitutionally affect its taxable value. What weight shall be given to this element, is left to the board. To uphold the law as a tax on a franchise or business would be, therefore, to commit to the discretion of the board, the amount which should be paid as tax for such franchise or business. This would be a delegation of legislative power to executive officers, not permissible under the constitution. Cincinnati, W. & Z. R. Co. v. Commissioners of Clinton Co., 1 Ohio St. 77–87.

I have reached the conclusion that this law is unconstitutional with great reluctance, and only after much consideration of it, fully

realizing the duty of a court to sustain a law if it can be done, particularly under the circumstances of this case. It is exceedingly embarrassing for a federal court to pass upon the validity of a state law, under a state constitution, in advance of the supreme court of the state, which is the ultimate tribunal on all such questions. Pelton v. Bank, 101 U. S. 143, 144. For this reason, I ordered a reargument of the case. If I could avoid passing on the question before the state supreme court shall have passed on it, with a due sense of my judicial obligation to litigants who, under the constitution and laws of the United States, have the right to invoke my judgment, I would gladly do so; but I have now held the case since December last, when the first argument was made, and since March 23d, when the second argument was made, and I think I ought not to delay longer when pressed by counsel for a decision. I ought to add that if the case could have been made to turn on a question under the federal constitution, I should have passed the state question without deciding it; but this was impossible. As, in my opinion, the law is invalid for the reasons given, it is unnecessary to consider the federal questions raised.

One thing more remains to be said, and that is, in regard to the payment of taxes by the complainant. If the part of the Nicholls law prescribing the mode of valuation is to be held invalid, then the whole law must be held invalid, because it is manifest that it was the invalid parts which induced the passage of the other provisions. The whole system constructed in the Nicholls law revolves around that as its prominent feature. With the law, must go the clause repealing old section 2778, for it is certain that the repealing clause would not have been passed, had the legislature anticipated a judicial declaration of the invalidity of section 2778a. The result is that section 2778 of the Revised Statutes is now in force, and the complainant ought to pay its taxes thereunder. It has, as the amendment to the bill and affidavits show, paid taxes on its real and personal property in Ohio, but not the taxes due under section 2778. Until this is done, it is not entitled to equitable relief. Unamended section 2778 prescribes that the telegraph company shall pay at the same rate per cent. as the tax on property in each county, upon the gross receipts in the county from business done within the state. In counties where the tax under the Nicholls law exceeds that under old section 2778, the preliminary injunction prayed for will be granted on condition that the taxes due therein under old 2778 are paid within 10 days from the filing of this opinion. In counties where the taxes to be paid under old 2778 exceed those due under the Nicholls law,—which must be the case in two or three counties with large cities,—the complainant cannot be injured, even if the certificate of the board of appraisers goes down to the auditor, and the tax is collected; for, if the Nicholls law is invalid, the company must there pay more taxes than those certified. As to the certificates to such counties, the board will not be enjoined. Counsel can doubtless agree in respect to which counties certificates should not be enjoined, and prepare the order of injunction accordingly. If within 10 days the additional

taxes have been paid in counties to be affected by the injunction thus drawn, and another amendment to the bill, with affidavit, is filed, showing such payment, the demurrer to the amended bill will be overruled; otherwise the bill will be dismissed.