F. W. COOK BREWING CO. v. GARBER et al.

(Circuit Court, M. D. Alabama, N. D. January 13, 1909.)

1. COURTS (§ 371*)—FEDERAL COURTS—JURISDICTION—STATUTES—CONSTRUCTION—VALIDITY.
    Where a federal court has jurisdiction of the parties and subject-matter, it has no power to refuse to exercise such jurisdiction merely because

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff seeks to litigate a right depending solely on the validity of a state statute as tested by the state Constitution.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 972; Dec. Dig. § 371.*]

2. COURTS (§ 489*)—FEDERAL COURTS—NATURE OF JURISDICTION.

The Circuit Courts of the United States in the exercise of their concurrent jurisdiction are for practical purposes courts of the states in which they sit; their functions under such circumstances being to enforce the rights of parties according to the laws of the states and the United States, and the courts of the state and the federal courts thereby constituting a single judicial system.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324, 1343; Dec. Dig. § 489.*]

3. INTOXICATING LIQUORS (§ 6*)—RIGHT TO SELL—LEGISLATIVE PROHIBITION.

So long as a state recognizes the right to make and sell intoxicating liquors, the occupation is under protection of the law, but is then at most a mere license which may be revoked at the arbitrary will of the Legislature, which if done, there is no right or property in the business in which the owner is protected by the Constitution and laws of the state or of the United States.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 4; Dec. Dig. § 6.*]

4. INJUNCTION (§ 9*)—STATE LAW—ALLEGED INVALIDITY—RIGHT TO SUE.

Where, in a suit by a nonresident manufacturer and seller of beer to enjoin the enforcement of the Alabama prohibitory law on the ground that the same had been illegally passed, it did not appear that complainant was authorized to do business in the state otherwise than in interstate transactions, even though the prohibitory law be set aside, and complainant's former customers, of whose intimidation complaint was made, had not qualified themselves to sell complainant's product, complainant was not entitled to sue to restrain the enforcement of such prohibitory law.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 8; Dec. Dig. § 9.*]

5. INJUNCTION (§ 132*)—PRELIMINARY INJUNCTION—PURPOSE.

The general office of a preliminary injunction is to maintain a status quo existing at the time of filing the bill, where the ultimate right is involved in doubt with the probabilities in its favor, and there is danger of irreparable injury if the preliminary injunction is withheld.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 302; Dec. Dig. § 132.*]

6. INJUNCTION (§ 137*)—PRELIMINARY INJUNCTION—STATUTES—PUBLIC INTEREST.

Where, in a suit to enjoin the enforcement of a prohibitory law, it appeared that the public had a vital interest therein, the court would be justified in refusing a preliminary injunction, though, if the matter concerned only the parties to the suit, the writ would be granted.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 307; Dec. Dig. § 137.*]

7. INJUNCTION (§ 137*)—PRELIMINARY INJUNCTION—ENFORCEMENT OF STATE STATUTE—CONTINUANCE FOR HEARING IN STATE COURT.

Where, in a suit in a federal court to enjoin the enforcement of a state prohibitory law on the theory that the law had been illegally passed, it appeared, on motion for a preliminary injunction, that the Supreme Court of the state would soon pass on the question, the federal court should await the state court's determination, especially where the injury to the public arising from the sustaining of plaintiff's contention would greatly exceed the benefits to be derived by complainant therefrom, since the de-

cision of the Supreme Court of the state on such question, when rendered, would be conclusive on the federal courts.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 307; Dec. Dig. § 137.*]

## In Equity.

Complainant, a corporation organized under the laws of Indiana, engaged in the manufacture and sale of beer, files its bill against Alexander M. Garber, Attorney General, Philip H. Stern, solicitor of Montgomery county, and Horace Hood, sheriff of Montgomery county, and others, citizens of Alabama, seeking, in substance, to prevent the defendants respectively from taking any steps to enforce the "general prohibition law," which prohibits the sale of intoxicating liquors and beer in this state, except as to transactions in interstate commerce, etc. The bill alleges that, by reason of the excellence of its beer and large sales thereof for a number of years to customers in Alabama, complainant had built up a good will in its business in this state which is worth at least the sum of $100,000, and that for many years before the passage of the prohibition act it maintained various and important agencies in the state for the sale of its product, and that most of its business was done by sale, not directly to consumers, but to wholesalers and retailers in Alabama, by whom it was disposed of to the public, and that so much so was this the case that complainant's business in disposing of its product in Alabama was and has been practically dependent upon the continuation in business of such wholesalers and retailers. The bill sets forth threats by the various defendants to prosecute complainant and its agents for violation of the statute if they sell beer or attempt to carry on a purely domestic business in this state. It alleges that its business, which is lawful, the prohibition law being alleged to be invalid, is being destroyed, etc., and is of the value of more than $2,000. The whole equity of the bill, in its last analysis, is rested upon the allegation that the statute known as the "general prohibition law" was not enacted in conformity to certain mandatory provisions of the Constitution of Alabama regarding the passage of laws, and the prohibition enactment is therefore without force of law, and that its enforcement by state officers, under such circumstances, would be a denial of due process to complainant, and inflict irreparable injury to its property rights and business in Alabama, and involve it in a multiplicity of suits and the defense of a multitude of indictments, if it has no other remedy than meeting the indictments and suits as they arise in the courts of law. In the view the court took of the case, it is not necessary to set out the particulars wherein it is alleged the Constitution was infringed in the passage of the statute. The bill prays a preliminary injunction against the officers named, and that on final hearing the injunction may be made perpetual, etc. The complainant moved for a restraining order and a preliminary injunction, of which notice was given the adverse parties, and upon the hearing the court denied both motions.

Troy, Watts & Letcher, for complainant.

Alex. M. Garber, Atty. Gen., Thos. W. Martin, Asst. Atty. Gen., Philip H. Stern, and Armstead Brown, for defendants.

JONES, District Judge (after stating the facts as above). The proposition upon which the complainant really rests the equity of its bill is that the act approved November 27, 1907, "to prohibit the manufacture, sale, barter, exchange, giving away to induce trade, and furnishing at public places or otherwise disposing of alcoholic, spirituous, vinous or malt liquors or other liquors or beverages by whatsoever name called, which, if drunk to excess will produce intoxication, except the sale of alcohol in certain cases upon certain conditions, and except the sale of wine for sacramental purposes," is not a valid law

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of this state, because there was such transgression in its enactment against mandatory requirements of the Constitution as to amending and passing bills that the act in question never had the force of law. The right and power of the state to pass such a law, the Constitution being conformed to in its enactment, is not and cannot be denied.

Respondents strenuously insist that the act is constitutional. Conceding for the sake of argument that the enactment is invalid, they insist that the complainant is in no position to challenge its constitutionality, since there are other laws and certain sections of the state Constitution which require the complainant to perform certain conditions precedent before it is entitled to protection as to any business done in this state, other than interstate commerce transactions, and that the bill does not show that complainant had complied with those laws. They also insist that this court cannot entertain this bill, because it shows no invasion of any rights secured under the Constitution or laws of the United States, and hinges its sole title to relief upon the allegations that the prohibition statute, which if valid puts an end to complainant's case, was not passed in conformity to the Constitution of the state of Alabama, which presents a question, the decision of which it is insisted lies so peculiarly within the province of the state court that the federal court ought not to entertain the bill, but should remit the complainant to the state forum, where alone the question can be finally determined. They further insist that the court has a discretion, in view of the nature of the property right asserted and the public concern in its exercise, to consider the harm which may result to the public from granting the preliminary injunction, as well as that which may result to complainant from refusing it, and on high grounds of public policy should withhold a preliminary injunction until the question of complainant's right to do other than interstate commerce in this state is tested by mandamus in the state courts, to compel the issue of a license to it or to the wholesalers and retailers of its beer in this state, which respondents insist, under the circumstances of this case, is an adequate and the only remedy.

Complainant, on the other hand, as strenuously insists, for reasons ably detailed, that the prohibition statute is invalid, and the complainant having built up a reputation and good will for its business and products, in which it has expended large sums of money, and being prepared to make large sales to wholesalers and retailers, who, but for the threats to prosecute them under the invalid enactment, would buy largely of complainant's product as they did in the past, the good will of the business is being destroyed, and it is prevented from making large profits which it otherwise would make, and that defendants are unable personally to respond for the amount of damages inflicted, whereby complainant is daily compelled to suffer irreparable injury, for the redress of which it has no adequate remedy at law. It also insists that the court not only has jurisdiction, but it is under duty now to determine the questions raised, and that since nothing but a pure question of law is involved, which cannot be varied on the final hearing, this court is bound to act now on its own judgment as to the constitutionality of the prohibition law, and, if it be of opinion

that it is invalid, must ex debito justitiæ grant the relief here prayed, upon the same principles which governed the court's action in the railroad rate cases here, and the action of the Supreme Court of the United States in Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932.

Under the Constitution and laws of the United States, the Circuit Courts of the United States have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature at common law and in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, in which there is a controversy between citizens of different states. A citizen of Indiana may therefore, other conditions permitting, litigate with citizens of Alabama in a federal court here any question which he might litigate if he were the plaintiff in a state court. The Constitution and laws giving a citizen of another state the right to resort to the federal court here to settle a dispute with a citizen of this state, the court has no power to cast such a suitor out of its portals merely because he seeks to litigate in the federal court a right dependent solely upon the construction or validity of the statutes of this state.

It must not be forgotten that the Circuit Courts of the United States in the exercise of such concurrent jurisdiction are, for all practical purposes, courts of the states in which they sit, and their function, under such circumstances, is to enforce the rights of the parties according to the laws of the state, just as the courts of the state in exercising jurisdiction concurrent with the Circuit Courts of the United States, in certain cases under the Constitution, laws, and treaties of the United States, must enforce the rights of the parties under the laws of the United States. In this way the state and federal courts' reciprocally support the authority of the state and federal governments, and for these purposes these courts constitute one judicial system. Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257.

The exercise of jurisdiction by the state and federal courts, in this class of cases, has always been governed by considerations of comity and the desire upon the part of each to avoid trenching upon the province of the other. When, however, it is essential to the ends of justice, and the necessities of the particular case require it, a federal court may, and frequently must, pass upon the constitutionality of a state statute in advance of the courts of the state, although the sole issue be whether the Legislature of the state in the passage of the statute has conformed to the mode required by the state Constitution for the passage of laws. The spirit in which the federal courts should deal with such matters has been amplified in many decisions of the federal courts. The writ of habeas corpus is one of the most sacred writs in our jurisprudence. Federal courts and judges have authority, and are under duty, to grant writs of habeas corpus whenever persons are deprived of liberty in violation of the Constitution and laws of the United States; yet so great is the solicitude of the courts of the United States not to interfere in advance in matters of this kind, where the execution of the laws of a state is concerned, that the Supreme Court has repeatedly declared that the federal courts should refuse to issue the writ in such cases, and put the parties to their

remedy by writ of error from the Supreme Court of the United States to the highest court of the state, except in extreme cases, where the operations of the government might be impeded, or persons are imprisoned by state authority for obedience to the laws or orders of the courts of the United States and the like.

The general duty of the federal courts in such cases is laid down by the Supreme Court of the United States in Felton v. Bank of the United States, 101 U. S. 143, 25 L. Ed. 901, where it is stated:

"It is an appropriate duty which this court is called upon to perform very often to protect rights founded upon the Constitution, laws, and treaties of the United States, when those rights are invaded by state authority; but it is a very different thing for this court to declare that an act of the state Legislature passed in the usual forms necessary to its validity is void, because that Legislature has violated the Constitution of the state. It has long been recognized by this court that the highest court of the state is the one to which such questions properly belong, and though the courts of the United States in exercising concurrent jurisdiction must decide for themselves, though the question has not been previously considered by the state court, it would be indelicate to make such decisions in advance of the state courts unless the case imperatively demanded it."

In Michigan Central Railway Co. v. Powers, 201 U. S. 291, 26 Sup. Ct. 461, 50 L. Ed. 744, it is said:

"Undoubtedly the federal court has the jurisdiction, and when the question is properly presented, it may often become its duty to pass upon an alleged conflict between a statute and the state Constitution, even before the question has been considered by the state tribunals. At the same time the court will be reluctant to do so. * * * And this reluctance becomes more imperative where the statute has been before the highest court of the state, and a decision rendered upon the assumption that it is valid, and this, although the direct question of validity was not presented and determined."

Circuit Judge Taft, in Western Union Telegraph Co. v. Poe (C. C.) 61 Fed. 468, expressed his embarrassment at having to decide such a question in the advance of a decision by the highest court of a state. On that account Judge Taft for several months held a case under advisement. which involved only the validity of a state statute according to its Constitution and laws, and finally rendered judgment in the case after long waiting, evidently because he despaired of any early decision by the highest court of the state, and was pressed by counsel not longer to delay a judgment the withholding of which might jeopardize an admitted property right. Having held the particular law in question unconstitutional, and the highest court of the state having afterwards sustained its validity, before the federal court had lost control of the case, Judge Taft promptly reversed his former ruling to make it harmonious with that of the highest court of the state. See, also, observations by Newman, District Judge, in Christian Moerlein Brewing Co. v. Hill et al. (not yet officially reported) 166 Fed. 140. The rule to be extracted from the decisions as to injunctions which interfere with the execution of state laws passed for the protection of the morals and peace of the state, especially where the issue is not as to the power of the state to pass the law, but only whether it has been passed in conformity to the state Constitution, is that the federal court should refrain from passing upon the statute in advance of a decision by the highest court of the state, except in very extreme

cases, where the nature of the right sought to be vindicated before the federal court imperatively demands its intervention in advance.

This case and the rate cases involve in some respects common principles, but the rule in the rate cases does not give the law which controls the issue of a preliminary injunction in a case like this. The difference between the two cases is in some important elements very great and vital. The rate cases concerned interruption of occupations which were not harmful or noxious in any way. On the contrary, the carrying on of the business of the carrier was laudable and promotive of the public weal, and the performance of it exacted by the laws of the state. The Legislature had no power, as in this instance, at its own mere pleasure, to prohibit the carrying on of the occupation. Its whole power was confined to properly regulating the rates. It had no power whatever to prescribe rates which would be confiscatory or oppressive. Whether or not the rate prescribed by statute had that effect depended upon the truth of controverted facts which could not be fairly ascertained prior to the final hearing. Although the rate laws were leveled at the carrying on of a lawful business, every single transaction in it, of which there were several thousand daily, was made the subject of a heavy penalty, and the carrier was thus placed in a position where it must submit to an irreparable loss or else disobey the laws, and, if mistaken in the justice of its complaint · against the rates, forfeit its entire property, and, even if successful in the courts, encounter burdens almost as great as would result from obedience to the law, and meanwhile be prevented practically from discharging public duties, inflicting untold harm upon the public as well as the carriers themselves. A prima facie showing having been made of irreparable injury to an· admitted property right, the court, upon exacting security for those who might be injured by a preliminary injunction, enjoined the enforcement of the rate statutes until the right could be adjudged on the final hearing after full proof. Nearly every property right sought to be protected in those cases found its final sanction in the Constitution and laws of the United States, questions upon which a decision of the state courts would in no way bind the federal courts, and which controlled the judgment as to the entire case, irrespective of matters wherein some of the laws were attacked solely because of their violation of the Constitution of the state.

In the case in hand, no property right whatever is involved, if the prohibition statute be valid. So long as the state law recognizes the' right to make and vend intoxicating liquors, that occupation is under the protection of the law, but even then it is at most mere license to carry on an occupation, which may be revoked at the arbitrary will of the Legislature at any time. If the Legislature chooses to outlaw the occupation, there is no right of property in the business in which the owner is protected by the Constitution and laws either of the state or of the United States. Courts, in dealing with such cases and exercising their preventive jurisdiction in equity in regard to interference with such occupations, have on high grounds of public policy been much more reluctant to interfere, than where its preventive pow-

·er is invoked to block interference with an occupation which the Legislature in no event may destroy and can only regulate, especially when the exercise of the property right does not endanger the lives, health, morals, or peace of the community. North American Cold Storage Co. v. City of Chicago et al. (decided by the Supreme Court of the United States, December 7, 1908) 211 U. S. 306, 29 Sup. Ct. 101, 53 L. Ed. ——, and cases there cited.

The complainant has its principal place of business in Evansville, Ind., and has there built up its business of brewing and manufacturing beer and other malt liquors. From there its product has been sent out to different states of the Union and to many foreign countries. The excellence of its product is not denied, nor that it has built up a good will in its business which is of great value. Prior to January 1, 1908, it had agencies in Alabama for the sale of its product and solicited orders and carried on its business within this state. At·that time it formally withdrew its agencies, doubtless because of the passage of the general prohibition law, which took effect on the first of this month, and thereafter, until the filing of the bill, shipped and sold its product here to retailers and wholesalers only in interstate transactions. These retailers and wholesalers had theretofore made large purchases from which complainant derived much profit. Its exact complaint now is that having built up at great expense a good will in its business, and having formerly done much domestic business in Alabama, through wholesalers and retailers, the good will of its business is jeoparded by the threats of individuals, who are officers of the state, to execute the provisions of an invalid prohibition law by criminal prosecutions, in consequence of which threats retailers and wholesalers, who in the past had bought, and who, but for such threats, would buy in the future, have been deterred from purchasing its product, whereby it has been subjected ·to irremediable loss in diminished profits, as the individuals named are not men of sufficient property to respond for all damage inflicted by the threats of the execution of the prohibition law, if it be invalid as complainant insists.

Complainant is not engaged in the making of beer in this state. The only injury of which it complains is that wholesalers and retailers here in consequence of the threats of prosecution, under what is claimed to be the invalid law, will not longer purchase its beer and malt liquors for resale in Alabama. The bill, it seems to the court, is not susceptible of the construction that complainant has complied with the Constitution and laws of this state so as to authorize it, the prohibition law being out of the way, to engage in business of any kind in this state, or that any threats have been made against it to prevent it from engaging in business here. True, it alleges the tender of $10 to the Secretary of State for the purpose of permitting it to do business here, but it is not alleged that it has by proper instrument designated a known place of business in this state and an authorized agent or agents residing thereat, nor that it has filed with the Secretary of State a copy of its charter. If it be conceded that complainant stands, after the tender to the Secretary of State, as though it had a license to exercise its corporate functions in this state, that only authorizes it to make con-

tracts within this state within the purview of its charter. It would not license it to engage in the business of a wholesaler or retailer of beer in this state without complying with the license law in that respect and paying the price of the license. Complainant therefore stands as having no right, even if the prohibition law be set aside, itself to carry on its business or sell its product in this state, otherwise than in interstate transactions. The wholesalers and retailers whose intimidation is complained of have not qualified themselves in any way to sell complainant's product. It is difficult therefore to see how complainant can hinge an equity in its bill upon the destruction of the good will of its business by their failure for the reasons alleged to purchase its goods.

It is true that the invisible, intangible expectation of future profits from customers attracted by the excellence of the product and the management of the business, which is denominated its good will, is a valuable property right which exists wherever markets may be lawfully found, without any reference to the original place of manufacture, and is protected in any forum where that good will is attacked by unlawful means, preventing customers from buying. The foundation, however, of the right of a court of equity to protect the good will of a business, depends upon whether the owner has the right to sell his product in the locality where his would-be customers are prevented from buying his product. If neither complainant nor the resident wholesalers or retailers, of whose intimidation complaint is made, have any right to sell beer here, and therefore will not buy the article for resale in the locality where the intimidation is practiced, and people in such locality are thereby prevented from becoming purchasers, the intimidation of such would-be purchasers is not in law an attack upon the good will of the business of complainant and furnishes no basis for a bill to protect it. The complainant not having taken out a license and complied with the law, has no authority to sell its beer in domestic or wholly state transactions, even with the prohibition law out of the way. Having no right to sell its beer here, otherwise than in interstate transactions, to wholesalers and retailers, and the latter not having taken out a license, complainant has no good will in that respect which the law can protect, since the good will which the law protects must grow out of or be bottomed upon the right to sell in the locality where the sale of the product is hindered.

We repeat if complainant itself has no right to sell its beer here, and the wholesalers and retailers, whom it is alleged are deterred from becoming purchasers of its beer, have no license or authority themselves to resell it, threats to proceed against the wholesalers and retailers, who are not qualified to do such business, even if the prohibition law be void, give no cause of action in favor of the complainant, because in the last analysis the only effect of such threats is to prevent either the complainant or the wholesalers and retailers from doing that which the law forbids them to do. Moreover, an injunction issued at the instance of a manufacturer to prevent the execution of an alleged invalid law against third persons, who, but for the fear of the law which prevents them from reselling in a given locality, would become

purchasers of the manufacturer's products, though they had not con-
tracted to do so, would carry the doctrine of the power of a court of
equity to interfere for the protection of the good will of a business to
startling lengths, especially when, as here, the law complained of is not
directed specially against complainant's wares, but operates upon every
one who sells the forbidden goods in the state. There is no such privi-
ty in right between the manufacturer and such third persons, under
such circumstances, as authorizes the manufacturer to complain, and
the injury is too remote and indirect to give a legal cause of action to
the manufacturer, even though the prohibition law be invalid.

If, however, the court is mistaken in the foregoing analysis of com-
plainant's bill, and the general allegation therein—that "at all times
herein mentioned, in carrying on its business as aforesaid, complain-
ant has observed such local rules and regulations, and complied with
such statutes of the state of Alabama, and of the United States as were
applicable"—should be taken to mean that the complainant has com-
plied with the constitution and laws of this state by filing the proper
papers with the Secretary of State and taking out the proper licenses
for its agents, then it becomes necessary to consider the duty of the
court, assuming the invalidity of the prohibition law. If complainant
and its agents are authorized to sell its product in this state, and have
complied with the state laws in that respect, and the prohibition stat-
ute be unconstitutional, then the threats of the defendants to execute
it with the result stated in the bill would present the case of individuals
under color of a void law inflicting irreparable injury upon a property
right, and the person thus injured would ordinarily be entitled to a
remedy in the court of equity, instead of being put to an action at law
to vindicate the right.

The office, in general, of a preliminary injunction, is to maintain a
status quo existing at the time of the filing of the bill, where the ulti-
mate right is involved in doubt with the probabilities in its favor, and
there is danger of irreparable injury if the preliminary injunction be
withheld, and its office sometimes is by means of its operation in the fu-
ture, upon the exercise of an existing right, to restore the status quo
to what it was before it has been illegally changed to the prejudice
of the complainant, who has endeavored to maintain it, and has been il-
legally prevented from doing so, without fault or acquiescence on his
part, prior to the filing of the bill. On issuing a preliminary injunction,
the court, except in very rare instances, must always consider the bal-
ance of resultant injury to the parties, and in many cases to the public,
and where the right asserted is one in the exercise of which the public
has a vital interest, as in the execution of laws of this kind, the court
may refuse a preliminary injunction, when, if the matter concerned on-
ly the parties to the suit, it would grant it. The situation at the time the
preliminary writ is asked must frequently control the denial or grant-
ing of it, even though the right sought to be protected be clear, and
though on final decree the court might be compelled to adjudge the
right in favor of the complainant. Winslow v. B. & O. R. R. Co., 188
U. S. 646, 23 Sup. Ct. 443, 47 L. Ed. 635.

Whatever may be the convictions of the court as to the validity or in-

validity of the prohibition statute, and as to the judgment which the court should pronounce thereon, if the case were ripe for final decree, it is clear in the conviction that it ought not on motion for a restraining order to render any judgment based upon the theory that the prohibition statute is invalid. The validity of the statute is a question of which the highest court of the state is the sole arbiter, and its decision is binding on all the world. The Supreme Court of the state will soon pass upon the question. The statute is now being measurably observed. If this court, on the theory that the prohibition statute is unconstitutional, should issue a preliminary injunction, and the Supreme Court of the state should afterwards uphold the validity of the law, this court would have immediately to retrace its steps and dismiss the bill. Under such circumstances, the issue of a preliminary injunction would not be a kindness even to those whose business has been destroyed by the operation of the statute. If they should re-enter the business under the protection of a preliminary injunction, and the highest court of the state should hold the law to be valid, parties who engaged in the business in the interval under the protection of a restraining order would be subject to indictments and punishment, and be prosecuted in the state courts, the moment that protection was withdrawn. Such a rapid change and reversal of conditions, especially in communities whose local authorities, from the time of their foundation down to the present day, have been permitted to control such matters according to the judgment and wishes of the people most immediately concerned, and have therefore permitted the carrying on of the occupation, would only bring about further business and social unrest and disturbance of public tranquility. These are consequences which no court can overlook in deciding upon the granting of a preliminary injunction, and they far outweigh any injury which an individual may suffer from being deprived of the right to enter the business, if it be found to exist, in the short interval necessary to get a decision of the Supreme Court of the state, especially when, as here, the complainant by injunction seeks to embark anew in a domestic business, which it had abandoned prior to the filing of its bill. The situation presents a case, at this time at least, where the rights of the individual must yield to considerations of public welfare. It is far better, at this stage of the litigation, for all concerned, to wait upon the judgment of the highest court of the state.

Counsel for respondents may draw an order refusing complainant's motion for a preliminary injunction, with leave to renew it at some later date, as it may be advised in view of the event of the litigation concerning this matter in the state courts. Winslow v. B. & O. R. R. Co., 188 U. S. 646, 23 Sup. Ct. 443, 47 L. Ed. 635.