ANHEUSER-BUSCH, INC. AND THE WEST END BREWING COMPANY

*vs.*

DAVID WALTON, LOUIS F. FLEMING, AND JOHN B. COUTURE, AS AND CONSTITUTING THE STATE LIQUOR COMMISSION OF THE STATE OF MAINE, AND CLYDE R. CHAPMAN, ATTORNEY-GENERAL OF THE STATE OF MAINE.

Androscoggin.     Opinion, January 9, 1937.

58

*Jacob H. Berman,*
*Edward J. Berman,*
*M. J. Donnelly,* for plaintiffs.
*Clyde R. Chapman,*
*John P. Carey,* for defendants.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

THAXTER, J.   The plaintiffs, Anheuser-Busch, Inc., and The West End Brewing Company, are foreign corporations located respectively in the states of Missouri and New York. They have brought a bill in equity seeking to enjoin the enforcement by the defendants, who constitute the State Liquor Commission of this state, of regulations 1, 2 and 4 which purport to have been promulgated by the commission in accordance with legislative authority. A decree was entered by the sitting Justice enjoining the enforcement of regulations 1 and 2. From this decree the defendants have appealed.

The plaintiffs are brewers of beer and malt beverages and sell their products to wholesalers in the State of Maine, who are licensed by this State to sell and distribute the same here. The sales are made f.o.b. at the factories of the plaintiffs, and the commodity is transported by the purchasers at their expense to their places of business in the State of Maine. It is conceded that the sales are consummated and title passes at the point of shipment outside of this state. The plaintiffs have built up a lucrative business, and now

claim that putting into effect the regulations of the commission will constitute an unlawful interference with the resale of their products by their customers here, and that thereby the good-will of their business may be destroyed.

In 1933 an act was passed by the legislature authorizing the manufacture and sale under various restrictions of malt liquors. P. L. 1933, Chap. 268. A state licensing board which, under the provisions of P. L. 1934, Chap. 300, has now become the State Liquor Commission, was established. It was given the usual administrative duties of such a board, among which was the power to issue licenses in accordance with the provisions of the statute. Its authority to make regulations is conferred by the following provisions of the statutes:

P. L. 1933, Chap. 268, Sec. 5, Par. 2:

"To adopt rules and regulations for the administration of this act and for the supervision and regulation of the manufacture, sale and transportation of malt beverages throughout the state; the manufacture, sale and transportation of which is hereby permitted and authorized."

P. L. 1935, Chap. 179, Sec. 2:

"The commission shall have the right to establish regulations for clarifying, carrying out, enforcing and preventing violation of all or any of the laws pertaining to liquor and such regulations shall have the force and effect of law unless and until set aside by some court of competent jurisdiction or revoked by the commission. The commission shall have power by regulation to shorten the permissible hours of sale in state stores and to prevent the sale by licensees of wine and spirits to minors or persons under the influence of liquor. The commission shall at least annually on or before June 30th of each year publish in a convenient pamphlet form all regulations then in force and shall furnish copies of such pamphlets to every licensee authorized by law to sell liquor."

The legislature likewise provided for various kinds of licenses and for the fees for each type. The pertinent part of these provisions for the purposes of this case reads as follows:

P. L. 1935, Chap. 159, Sec. 8:

"Licenses for sale and distribution of malt beverages at wholesale under such regulations as the state licensing board may prescribe may be issued by the state licensing board upon an application in such form as may be prescribed by said board and upon payment of an annual fee of $300 *for each distributing center or warehouse of said wholesale licensee*. A manufacturer's license issued under the preceding section shall include the right to such licensee to sell and distribute malt beverages at wholesale without the payment of any additional fee."

There is also provided by Sec. 19 of the 1933 act an excise tax.

"Whereas the license fees hereinbefore provided for under this act are for the purpose of regulating the manufacture and sale of malt beverages, now, therefore, in addition thereto, there is hereby levied and imposed an excise tax on all malt beverages of $1.24 on each and every barrel containing not more than 31 gallons and at a like rate for any other quantity or for the fractional parts of a barrel. The payment of said tax shall be evidenced by a stamp affixed to each barrel, bottle or other container containing malt beverages. Said stamp shall express the amount of the tax paid evidenced thereby. No malt beverage shall be sold in or from a container unless such stamp shall be affixed thereto."

The regulations of the commission which are attacked in this bill read as follows:

"*Manufacturers and Foreign Wholesalers*. No manufacturer or foreign wholesaler of malt liquors shall hold for sale, sell, offer for sale, in intrastate commerce malt liquors or transport or cause the same to be transported into the State of Maine for resale unless such manufacturer or foreign wholesaler has obtained from the Commission a certificate of approval. The fee for a certificate of approval issued shall be two hundred dollars per annum, which sum shall accompany the application for such certificate.

"All manufacturers or foreign wholesalers to whom a cer-

tificate of approval has been granted shall furnish the Commission with a copy of every invoice sent to Maine wholesale licensees. They shall also furnish a monthly report on or before the tenth day of each calendar month in such form as may be prescribed by the Commission, and further, shall not ship or cause to be transported into the State of Maine malt liquors until the Commission has certified that excise stamps have been requisitioned and paid for by said Maine wholesale licensee.

"The purposes of the section are to regulate the importation, transportation and sale of malt liquors, also in addition thereto, to regulate and control the collection of excise taxes.

"The fee received under this section shall be used by said Commission for carrying out the purposes of this section.

"2. *Wholesalers*. No Maine wholesale licensee shall purchase or cause to be transported into this State malt liquors from an individual, partnership, or corporation, manufacturer of malt liquors or foreign wholesaler of said malt liquors, to whom a certificate of approval has not been granted by the Commission.

"All purchase order forms are to be furnished by the Commission, and all orders are to be executed in quintuplet. The original copy is to be sent direct to the brewery or foreign wholesaler. Three copies of the order are to be mailed to the Commission with a check for the amount of excise tax stamps required to cover the amount of the order. The Commission shall mail one copy, after having certified thereon that the excise tax stamps thereon have been purchased, to the brewery or foreign wholesaler with whom the order has been placed. One copy shall be mailed to the Maine wholesale licensee with a notation that the excise tax stamps have been paid, with the excise tax stamps, which stamps shall be kept for monthly cancellation. The brewery or foreign wholesaler may ship upon receipt of the original order upon permission being granted to do so by the Commission."

"No Maine wholesale licensee shall sell malt liquors to another Maine wholesale licensee, which were not purchased from a brewery or foreign wholesaler holding a certificate of approval.

"4. *Excise Tax Stamps*. Excise tax stamps on bottles or containers in lieu thereof shall be denominated as follows: sixteen ounces or under, one-half cent, thirty-two ounces or under, one cent.

"Excise tax stamps on barrels shall be denominated as follows: One dollar and twenty-four cents for a barrel, sixty-four cents for a half barrel, and thirty-two cents for a quarter barrel."

To compel the foreign manufacturer or wholesaler to pay the fee prescribed by regulation 1 the commission has resort to the customers of such manufacturer in the State of Maine, who, under the provisions of regulation 2, are prohibited under penalty of forfeiture of their local licenses, from purchasing from any manufacturer who has not complied with the requirements of section 1. By pressure on the purchaser here in Maine compliance is sought from the plaintiffs and others similarly situated without the state. It is a case of the manufacturer paying the fee or losing his market in the state.

Regulation 4 provides for a different tax than that prescribed by the legislature in Sec. 19 *supra*. The act provides specifically that the excise tax shall be $1.24 on each and every barrel containing not more than thirty-one gallons "and at a like rate for any other quantity or for the fractional part of a barrel." The commission by its regulation, however, has attempted to increase the tax from sixty-two cents for a half barrel to sixty-four cents and from thirty-one cents to thirty-two cents for a quarter barrel. Furthermore, in spite of the legislative mandate, the commission has prescribed a flat rate of one-half cent for beer in containers of less than sixteen ounces and one cent for beer in containers of less than thirty-two ounces. The effect of this provision is to raise the rate for each thirty-one gallons of beer in twelve ounce bottles from $1.24 as provided in the statute to $1.65.

The sitting Justice made no decree with respect to regulation 4, because holding Secs. 1 and 2 invalid gave to the plaintiffs in his opinion all necessary relief. Under the provisions of regulation 2, however, no wholesaler in Maine can import the plaintiffs' products until the stamps have been purchased by the wholesaler as required

by Sec. 4. Under such circumstances we feel that it is proper to discuss the validity of Sec. 4.

The defendants claim that the plaintiffs have no standing before the court: in the first place because they are non-residents, carry on no business in Maine, and as the sale of their products takes place outside of the state are not amenable to the laws of Maine; and, secondly, because they do not come before the court with clean hands.

There is a touch of irony in the defendants' claim that the plaintiffs are not subject to the laws of this state; for the whole purpose of the regulations in questions is to bring them under the control of the local commission and to force from them the payment of a tax. But be that as it may, their right to attack the validity of these regulations seems to be established both by reason and by authority.

The competitive conditions, under which a business is carried on today, make it more than ever important that its normal current shall not be even temporarily checked or diverted. What gives to a business its vitality and strength is its good-will, its attribute as a going enterprise. These elements are a species of property which the law will protect from unlawful injury. It makes no difference that the transactions in question are carried on by a foreign corporation, or whether a particular sale may have been consummated within or without the state. In its practical effect there is no difference in the attempt to stop the flow of trade by bringing unlawful pressure within a state on the customers of a foreign manufacturer and in the effort to stop unlawfully at its source the movement of commodities in interstate commerce. The damage is the same in either case. And the right to relief does not depend on the particular manner in which the injury is inflicted. So long, therefore, as these plaintiffs comply with our laws, they have, except for restrictions lawfully effective, the right to a free market for their products within our borders.

The case of *Savage* v. *Jones*, 225 U. S., 501, 32 S. Ct., 715, 56 L. Ed., 1182, is an authority exactly in point. The plaintiff was a manufacturer in Minnesota of a stock food. The sales were made f.o.b. Minneapolis and the freight was paid by the out-of-state purchasers. A statute of Indiana provided that such a product should be so

branded as to show the ingredients. An injunction against the enforcement of the law, which was claimed to be unconstitutional, was sought by the plaintiff on the ground that the officials charged with the enforcement of the act in Indiana were threatening prosecution of the plaintiff's customers there. The court, though deciding that the act was valid, held that the plaintiff could properly contest its constitutionality. The opinion says, page 519:

"An attack upon this right of the importing purchasers to sell in the original packages bought from the complainant, not only would be to their prejudice, but inevitably would inflict injury upon the complainant by reducing his interstate sales, —a result to be avoided only through his compliance with the act by filing the statement and affixing to his goods the labels it required. According to the bill, the state chemist had threatened the complainant that, in default of such compliance, he would cause the arrest and prosecution of every person dealing in the article within the state, and had distributed broadcast throughout the state warning circulars. If the statute of Indiana, as applied to sales by importing purchasers in the original packages, constitutes an unwarrantable interference with interstate commerce in the complainant's product, he had standing to complain, and was entitled to relief against enforcement by the defendant of the illegal demands."

In *Pierce* v. *Society of the Sisters of The Holy Names of Jesus and Mary*, 268 U. S., 510, 45 S. Ct., 571, 69 L. Ed., 1070, the court upheld the right of the proprietors of a private school to attack the constitutionality of a statute which required all children of certain ages to attend the public schools. We find the following language in the opinion, pages 535–536:

"Generally it is entirely true, as urged by counsel, that no person in any business has such an interest in possible customers as to enable him to restrain exercise of proper power of the state upon the ground that he will be deprived of patronage. But the injunctions here sought are not against the exercise of any *proper* power. Appellees asked protection against arbitrary, unreasonable, and unlawful interference

with their patrons, and the consequent destruction of their business and property. Their interest is clear and immediate, within the rule approved in *Truax* v. *Raich*, *Truax* v. *Corrigan*, and *Terrace* v. *Thompson*, supra, and many other cases where injunctions have issued to protect business enterprises against interference with the freedom of patrons or customers."

See also to the same general effect as the above cases *Buchanan* v. *Warley*, 245 U. S., 60, 38 S. Ct., 16, 62 L. Ed., 149 ; *Station W B T, Inc.* v. *Poulnot*, 46 Fed. (2d), 671.

Counsel for the defendants have cited two cases which they hold are authorities for the proposition that these plaintiffs have no standing in court.

The first of these, *Premier-Pabst Sales Company et al.* v. *McNutt et al.*, 17 F. Supp., 708, U. S. District Court for the Southern District of Indiana, Indianapolis Division, decided by a three-judge court February 18, 1935, holds valid an act of the Indiana Legislature and certain regulations promulgated in accordance with its provisions which imposed certain restrictions on the importation of liquor into Indiana. The case goes no farther than to decide that the state could lawfully put such a burden on interstate commerce.

The second case, *F. W. Cook Brewing Co.* v. *Garber*, 168 Fed., 942, holds that the plaintiff had no standing in court to attack the validity of the prohibition law of Alabama, because neither the plaintiff nor its customers in Alabama, even with that particular law out of the way, would have had the right to sell its product in Alabama. The court points out that the only effect of the threats against the plaintiffs' customers would be "to prevent either the complainants or the wholesalers and retailers from doing that which the law forbids them to do." The principle of this case is the same as that of *Premier-Pabst Sales Company* v. *Grosscup* (U. S. Supreme Court, May 18, 1936), 80 L. Ed., 1155, 298 U. S., 226, 56 S. Ct., 754.

Each of these cases is distinguishable from the one before us ; but if there is anything in the opinion in either which counsel for the defendants can construe as supporting their contention, it is only

necessary to point out that it is in conflict with the principle laid down in *Savage* v. *Jones*, supra.

The argument that the plaintiffs do not come into court with clean hands seems to be based on the claim that they have solicited trade in the State of Maine not having been licensed so to do. The plaintiffs have done no more, however, than to build up a market for their products here by advertising. This they had a perfect right to do. The sales have been made by duly licensed wholesalers. The defendants' contention is without merit.

This brings us to a consideration of the validity of the regulations promulgated by the commission. The plaintiffs attack these on two main grounds: first, that the commission was without the power to make such regulations; second, that they impose an unlawful burden on interstate commerce.

The view, which we take as to the power of the commission, renders a discussion of the second question unnecessary. In connection therewith, however, we call attention to the recent case of *State Board of Equalization of California et al.* v. *Young's Market Company et al.* (U. S. Supreme Court November 9, 1936), 81 L. Ed., 37, 57 S. Ct., 77.

The plaintiffs' claim that the State Liquor Commission had no power to enact the regulations in question must be sustained. No principle is more firmly embedded in our concept of government than that the laws under which we live shall be enacted by the people or by their representatives in legislature assembled. By Article III of our Constitution exercise by one department of government of the prerogatives of another is specifically forbidden.

"Sec. 1. The powers of this government shall be divided into three distinct departments, the Legislative, Executive and Judicial.

"Sec. 2. No person or persons, belonging to one of these departments, shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted."

By adherence to this principle we have been saved from the tyranny consequent on the promulgation of executive edicts, by which the liberties of peoples in other lands have been destroyed,

and have established here in the apt phrase of the declaration of rights of the Commonwealth of Massachusetts "a government of laws and not of men."

Citation of authority to support a doctrine so fundamental seems hardly necessary but we call attention to two recent well-known cases where the principle has been reiterated. *Panama Refining Company* v. *Ryan*, 293 U. S., 388, 55 S. Ct., 241, 79 L. Ed., 446 ; *A. L. A. Schechter Poultry Corporation* v. *United States of America*, 295 U. S., 495, 55 S. Ct., 837, 79 L. Ed., 1570.

What has this commission attempted to do? In the face of a statute which fixes an annual fee of $300 on wholesalers of malt liquors in the State of Maine, it has put an additional yearly tax of $200 on the foreign manufacturer for the issuance of a so-called certificate of approval, and attempts to force the payment of such exaction by threats of prosecution of wholesalers within this state who purchase from a foreign manufacturer who has not paid such tax and procured such certificate of approval. Furthermore, this regulation was promulgated in spite of the fact that at its eighty-seventh session the Maine Legislature refused to pass an amendment to P. L., Chap. 159, Sec. 8, the purpose of which was to forbid the wholesale licensee within this state from purchasing malt liquors from a foreign manufacturer who had not procured such certificate of approval. Legislative Record Eighty-Seventh Session of Maine Legislature 1935, Pages 447, 643, 681, 819, 829, 908, 947.

By regulation 4 the commission seeks to increase the excise tax fixed by the legislature and attempts to force a compliance by providing in regulation 2 that the brewery or foreign wholesaler may ship its product with the commission's permission, when the commission has been notified that the wholesale licensee within the state has paid such tax.

Nowhere in the statutes relating to this subject is there the slightest indication that the legislature even attempted to give to the State Liquor Commission the authority which it now claims to have. Its power to make rules and regulations extends only to such details of administration as are necessary to carry out and enforce the mandate of the legislature. What the commission has attempted to do in this instance constitutes a flagrant usurpation of a

prerogative which belongs to the legislature, and is subversive of those principles which are the foundation of orderly government. The regulations in question are invalid, and the attempt of the commission to enforce them was properly enjoined.

*Appeal dismissed.*
*Decree below affirmed.*