RISLEY v. CITY OF UTICA et al.

(Circuit Court, N. D. New York. April 1, 1909.)

1. CONSTITUTIONAL LAW (§§ 213, 254*)—FOURTEENTH AMENDMENT—APPLICATION.

The prohibition of the fourteenth amendment of the federal Constitution that no state shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws, while directed against the state, and not against individuals, citizens, or municipalities, nevertheless includes all the instrumentalities of the state, so that whoever by virtue of a public position under a state government deprives another of any right protected by such amendment is guilty of a violation thereof; his act being regarded as the act of the state.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 735; Dec. Dig. §§ 213, 254.*]

2. CONSTITUTIONAL LAW (§§ 229, 283*)—DUE PROCESS OF LAW—TAXING POWER.

The state having vested the taxing power for municipal purposes of the city of Utica in its city council, a city ordinance imposing a water tax on a property owner within such city, without any corresponding benefit, or any opportunity to be heard in resistance of such tax, constituted a violation by the state of the fourteenth amendment of the federal Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 685, 891-906; Dec. Dig. §§ 229, 283.*]

3. COURTS (§ 255*)—FEDERAL COURTS—JURISDICTION.

The circuit courts of the United States have only such jurisdiction as Congress has conferred on them, except such as necessarily inheres in a court, such as power to punish for contempt, etc.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 792, 794, 805; Dec. Dig. § 255.*]

4. COURTS (§ 326*)—FEDERAL COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.

Act March 3, 1875, c. 137, § 1, 18 Stat. 470, Act March 3, 1887, c. 373, § 1, 24 Stat. 552, Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 (U. S. Comp.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

168 F.—47

St. 1901, p. 508) declares that United States circuit courts shall have concurrent jurisdiction with the courts of the several states of all suits of a civil nature at common law, or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000 arising under the Constitution or laws of the United States, or treaties made or which shall be made, under their authority, and also in a case of diversity of citizenship. *Held* that where the case arises under the Constitution and laws of the United States, diversity of citizenship is not required to establish federal jurisdiction, though it is necessary that the matter in dispute shall be over $2,000, but where the case does not arise under the Constitution or laws of the United States, there must be both diversity of citizenship and matter in dispute exceeding $2,000.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 888; Dec. Dig. § 326.*

Jurisdiction of circuit courts as determined by amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

**5. COURTS (§ 328*)—FEDERAL COURTS—MATTER IN DISPUTE—ONE SUING FOR HIMSELF AND OTHERS.**

Where one sues on behalf of himself and all others of a class similarly situated, the aggregate interest of those who join in the suit, and not those of the whole class, constitutes the matter in dispute.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 890; Dec. Dig. § 328.*]

**6. COURTS (§ 328*)—FEDERAL COURTS—JURISDICTION—ILLEGAL TAX—MATTER IN DISPUTE.**

A taxpayer of the city of Utica attacked a contract between the city and a water company, the bill alleging that the amount the city was to pay the company on November 15, 1907, was $38,903.52, which was included in the city's tax levy; that the tax rate in the city was $9.80 per thousand, and that complainant's farm was assessed at $2,000; that additional expenses were being incurred for water mains, etc., amounting to $120,000, the interest on which would be added to the tax levy thereafter and become an additional burden on all the taxable property in the city, including that of complainant; that the warrant for 1907 had been signed and delivered, and included a tax of over $20 against complainant's property; that complainant derived no benefit whatever from such contract between the city and the water company; that he was afforded no opportunity to be heard in resistance of the tax, which was illegal, and that an actual levy on his property had been made to pay the same. *Held,* that the amount of the tax levied against complainant was the matter in dispute in such action, which, being less than $2,000, the case was not within the jurisdiction of the federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 890; Dec. Dig. § 328.*]

**7. TAXATION (§ 309*)—"ASSESSED."**

The term "assessed," with reference to taxation, means the amount of the tax to be imposed on the property and collected. To assess is to rate or to fix the proportion which every person has to pay of any particular tax; the determination by the taxing body of the tax to be paid by each individual, and adjustment of the shares of a contribution by several toward a common beneficial object according to the benefit received; to set, fix, or charge a certain sum upon, by way of tax, as to assess each individual in due proportion—the tax being regarded as assessed when it is apportioned.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 309.*

For other definitions, see Words and Phrases, vol. 1, pp. 547–549; vol. 8, p. 7583.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**In Equity.**

Demurrer by the Consolidated Water Company of Utica to bill of complaint seeking, amongst other things to enjoin and restrain defendants from levying and collecting taxes on certain of his property in said city of Utica, on the ground that the laws of the state authorizing and permitting it are in violation of the Constitution of the United States, in that he is denied equal rights and the equal protection of the law, and due process of law, or that such tax is being levied and collected in violation of such constitutional rights.

Risley & Love, for complainant.

Lynch & Willis (C. E. Snyder, of counsel), for defendant Consolidated Water Co. of Utica.

RAY, District Judge. The parties to this suit are all citizens and residents of the state of New York, where the property taxed is situated, and there is no jurisdiction in this court unless a question is fairly presented arising under the Constitution or laws of the United States. The complainant brings the action for the benefit of himself and all others similarly situated, of whom there are quite a number.

The city of Utica is a municipal corporation existing under an act of the Legislature of the state of New York entitled "An act to revise the charter of the city of Utica," passed February 28, 1862 (Laws 1862, p. 28, c. 18), and the several acts supplementary thereto and amendatory thereof. The city, under its charter, has a mayor and 15 aldermen, who constitute the common council of said city. The common council is thereby authorized to regulate public wells, aqueducts, and reservoirs for the convenience of the inhabitants of the city and for protection against fire and to prevent the waste of water. The city does not own or operate any water system in said city, or any part of same, for the convenience of its inhabitants or protection against fire. The city and its inhabitants are dependent upon the Consolidated Water Company of Utica for their water supply for fire purposes and domestic use. Ordinances and resolutions of the common council may be vetoed by the mayor, but by a two-thirds vote it may be passed and become a law notwithstanding such veto. The said common council has authority under the charter to raise by tax upon the taxable property of the city certain sums of money to defray the general expenses of the city government, street lighting, parks, etc.

The Utica Waterworks Company was a domestic corporation organized to supply water to the city of Utica and the inhabitants thereof. It consolidated with the Trenton Falls Waterworks Company, and the consolidated companies became the Consolidated Water Company of Utica, and is now supplying water to said city for its use, and that of certain of its inhabitants for domestic use and fire purposes. The water so supplied is conducted through pipes laid in certain of its streets by the authority and with the consent of the common council, and these pipes are connected with the source of supply. There are more than 115 miles in length of public streets in said city, but the total number of miles of pipe laid in said streets is less than 95.

The complainant now is, and for more than 25 years last past has

been, the owner and occupant by his tenant of a farm of some 29½ acres of land located in the Thirteenth ward of said city. Upon this farm there is a 12-room dwelling house, horse barn, cow and hay barn, milkhouse, and other buildings of value used upon and in connection with said farm, and which have been used as a part of and in connection with said farm for many years last past. On said farm are three wells, two of which become dry in dry seasons, and the third is adjacent to the barn, and the water thereof is not suitable for domestic purposes. The supply of water upon said farm is wholly inadequate to protect the buildings thereon in case of fire. This farm is located on what is commonly known as the "Welshbush Road" in said city, and there is no water main or other pipe connecting with any pipe, hydrant, or water supply furnished by the city of Utica or the said Consolidated Water Company or its predecessor on said road or farm or adjacent thereto, and the nearest water main to the said farm and farm buildings is one mile substantially distant therefrom and three-fourths of a mile distant from any part of the farm. The result is that neither the city nor the said water company provide or furnish any means whatever for the protection of the buildings of the complainant situated on said farm, and such buildings are utterly without protection in case of fire.

The complainant in due form has urged and requested the city more than once to extend or cause to be extended to some point upon said farm or said Welshbush road or near said buildings a water main or pipe so as to furnish protection to complainant's said buildings on said farm against fire, but the city and its common council have neglected, failed, and refused finally so to do. At one time the common council duly adopted a resolution or ordinance to extend a water main to and upon said road and near to or by the said buildings of complainant; but the mayor vetoed the ordinance, and since that time the city and its authorities have failed to take further action, although requested so to do.

The city by its common council has extended water mains in other streets, and contracted to pay large sums for laying water pipes in other streets and sections, and levies and assesses the expense of furnishing water to various parts of the city for fire purposes upon all the taxable property of said city, including the said farm and farm property of the complainant and others in that vicinity similarly situated. These taxes have been laid, assessed, and collected for some years, and taxes for such purposes are now assessed, levied, and threatened to be collected of the complainant by levy upon and a sale of his said property. When the city refused to extend protection against fire to the buildings and property of the complainant on request of the complainant, he gave notice that he would not pay taxes for such purposes, and that the taxes assessed and levied for such purposes were illegal and in violation of his rights under the Constitution of the United States, and, upon his refusal to pay such taxes levied for such purposes, the city, by authority of its common council, levied upon and threatened to sell the said property of the complainant.

By chapter 393, p. 937, Laws of 1867, the Legislature of the state

of New York passed an act entitled "An act to authorize the Utica Water Works Company to increase its capital stock and to contract with the common council of the city of Utica for a supply of water in said city for the extinguishment of fires."

Section 1 of that act reads as follows:

"The common council of the city of Utica are hereby authorized and empowered to make a contract with the Utica Water Works Co. and to fix and agree upon the sum to be paid annually therefor, for a supply of water for the extinguishment of fires in said city; and said Utica Water Works Co. shall, when such contract is made, furnish water to the city of Utica for the purposes of extinguishing fires, and shall lay and extend its pipes and conduits in such streets as the common council shall designate, and provide suitable reservoirs to constantly supply said city with sufficient water for the extinguishment of fires. Said sum fixed as the annual sum to be paid to said Utica Water Works Co. for a supply of water for the purpose of extinguishing fires, shall be added in each year to the tax authorized to be raised by the 47th section of the city charter of said city of Utica and shall be collected therewith, and by the same power and authority."

Section 2 authorized an increase of the capital stock of said company to a sum not exceeding $200,000, to be fixed by the directors thereof. April 7, 1870 (Laws 1870, p. 415, c. 143), this act was amended authorizing an increase of the capital stock to $400,000, and May 17, 1887 (Laws 1887, p. 443, c. 359), the act was further amended authorizing an increase of the capital stock to $600,000.

May 19, 1868, under and pursuant to the authority conferred by said act, a contract was entered into between the said city and the said water company, which reads as follows:

"In pursuance of chapter 393 of the Laws of 1867 it is agreed by and between the Utica Water Works Company and the city of Utica as follows, to wit:

"The said company agrees to furnish water for the said city for the extinguishment of fires; and to lay and extend its pipes and conduits in the streets designated upon a map and plan presented to the common council of said city by a committee of the directors of said company on the 20th day of April, 1868, duplicate of which is on file in the office of the city clerk and is certified by Theodore S. Sayre on behalf of the city committee as a map and plan here referred to and to provide suitable reservoirs to constantly supply said city with sufficient water for the extinguishment of fires, provided said city shall pay therefor the compensation hereinafter mentioned and also upon the condition that the said company shall be able on or before the 15th day of November next by a sale of new stock or otherwise to raise sufficient money to complete the works contemplated by this contract.

"And the city of Utica agrees that when the said company shall have furnished by the said reservoirs and by the said pipes and conduits a supply of water in manner and for the purpose aforesaid and so long as they shall continue to supply sufficient water for said purpose it will pay therefor to the said company the sum of ten thousand dollars ($10,000.00) annually, to wit: On the 15th day of November in each and every year and will also pay and discharge one-half of all taxes aforesaid upon said company or its works or property within the limits of said city and taxes thereon in excess of the sum of one thousand dollars. The amount of the first payment to be determined by reckoning from the time a supply of water is provided in the pipes and conduits in manner aforesaid to the 15th day of November next thereafter, and if it shall be a part of a year from said time to said 15th of November then the sum to be paid on said day shall bear the same proportion to ten thousand dollars that the said part of a year shall bear to a whole

year and the taxes to be paid by the city shall be one-half of all taxes in excess of one thousand dollars aforesaid in said city against said company after the supply of water shall be furnished as aforesaid.

"It is agreed by the parties hereto that if it shall be found necessary or expedient to change the details of the said pipes and conduits, the said company by and with the consent of the common council or of a committee thereof first had and obtained, but not otherwise, shall be at liberty to make such change, provided same shall not prevent or in any material degree interfere with a supply of water as aforesaid, and if said city shall determine to have said water pipes extend on any street beyond the point designated on said map, the said company agree to extend the same to such point as may be designated, the said city agreeing to pay in addition to the sum herein specified seven per cent. upon the cost of said extension or new work.

"The said company agree that the city may obtain a supply of water from the company's pipes for the city hall and other public buildings owned or occupied for municipal purposes without the payment of water rents but subject in other respects to the usual rules of the company.

"It is understood and agreed that the city is to furnish all the hydrants which it may require for use in extinguishing fires; that the company shall put in and connect the same with the water pipes in such place as may be designated by the said city and keep the same in repair but that the city shall at all times pay the expenses of putting in, connecting and repairing said hydrants in accordance with the terms now and always heretofore existing between the company and the city for a supply of water from the company's present works, but no portion of the expense to be paid by the said city shall include the expense of the pipe connecting the hydrant with the water or main pipe.

"The said company further agrees with said city that as soon as the money hereinbefore mentioned shall be raised and paid or secured to be paid to the satisfaction of the directors of said company they will proceed with all reasonable diligence to the construction of the works provided for by this contract and with like diligence to the completion of the same.

"It is estimated that the whole work herein provided for according to the map, plan and specification herein referred to will cost more than the sum of one hundred and twenty-five thousand dollars. If, however, it shall cost less than that sum the said city in lieu of said ten thousand dollars shall pay seven per cent. upon the actual cost of said work and the taxes as hereinbefore stated.

"It being understood and agreed that the said cost of said whole work is to include the cost of making such changes, additions and repairs of the existing works of the company as shall be necessary to enable the said existing works to bear the additional pressure of water to be created by the new works and to be properly adapted thereto and so as to make the whole sufficient and as complete as may be for furnishing a supply of water as aforesaid throughout their whole extent.

"And the said waterworks company agree to erect fountains in such places in the streets as may be designated by the common council not exceeding six in number and furnish the same with water for drinking purposes at said fountains only (not including the drinking or watering of horses and cattle) but the whole expense of procuring, erecting, putting down and connecting said fountains shall be paid by the city.

"The company is to make no charge for water thus supplied. It is to be at liberty to shut off the water from said fountains when necessary to prevent freezing and also when required by general scarcity of water.

"The fountains to be under the charge and control of the superintendent of the company.

"Given under our hands and corporate seal this 19th day of May, 1868.

"J. Thos. Spriggs, Mayor of City of Utica.
"Thos. S. McIncrow, City Clerk.
"[Corporate seal of the Utica Waterworks Co.]
"W. D. Hamlin, President.
"E. A. Wetmore, Secretary."

That part of the Constitution of the United States invoked here is so much of the fourteenth amendment as reads as follows:

"Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

It will be noted that the prohibition is directed against the state, and not against individuals, citizens, or municipalities. But the provisions refer to and include all the instrumentalities of the state, to its legislative, executive, and judicial authorities, and whoever by virtue of public position under a state government deprives another of any right protected by that amendment against deprivation by the state violates the constitutional inhibition; and as he acts in the name of and for the state, and is clothed with the state's power, his act is that of the state. Chicago, Burlington & Q. R. Co. v. Chicago, 166 U. S. 226, 233, 234, 17 Sup. Ct. 581, 41 L. Ed. 979; Penn Mutual Life Ins. Co. v. Austin, 168 U. S. 685, 694, 18 Sup. Ct. 223, 42 L. Ed. 626; City Railway Company v. Citizens' Street Railroad Company, 166 U. S. 557, 562, 563, 17 Sup. Ct. 653, 41 L. Ed. 1114. See, also, Brannon's "The Fourteenth Amendment," 97, 98; Ex parte Virginia, 100 U. S. 339, 347, 25 L. Ed. 676.

Further, it may be observed that the first part of the amendment is directed to the making and enforcing of laws, viz., "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States," but the second and following part does not. For this reason cases arising under the first part of the amendment may not be at all applicable to those arising under the second part, which is invoked here. However, as was decided in N. O. Waterworks v. La. Sugar Co., 125 U. S. 18, 31, 8 Sup. Ct. 741, 31 L. Ed. 607:

"So a by-law or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the Legislature to the corporation as a political subdivision of the state, having all the force of law within the limits of the municipality, that it may properly be considered as a law, within the meaning of this article of the Constitution of the United States.

"For instance, the power of determining what persons and property shall be taxed belongs exclusively to the legislative branch of the government, and, whether exercised by the Legislature itself, or delegated by it to a municipal corporation, is strictly a legislative power. United States v. New Orleans, 98 U. S. 381, 392, 25 L. Ed. 225; Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197. Accordingly, where the city council of Charleston, upon which the Legislature of South Carolina, by the city charter, had conferred the power of taxing persons and property within the city, passed ordinances assessing a tax upon bonds of the city, and thus diminishing the amount of interest which it had agreed to pay, this court held such ordinances to be laws impairing the obligation of contracts, for the reason that the city charter gave limited legislative power to the city council, and, when the ordinances were passed under the supposed authority of the legislative act, their provisions became the law of the state. Murray v. Charleston, 96 U. S. 432, 440, 24 L. Ed. 760. See, also, Home Ins. Co. v. City Council of Augusta, 93 U. S. 116, 23 L. Ed. 825."

The Legislature of the state of New York has vested the taxing power of the state in the common council of the city of Utica in so far as the levying and collection of taxes for municipal purposes, including the supply of water for domestic and fire purposes, is concerned. The state, through its agencies duly established, and having power for the

purpose granted by the state, is exercising this taxing power. It is the act of the state, and, if the common council of the city of Utica deprives, or by the exercise of this power seeks to deprive, the complainant of his property without due process of law, or denies to him the equal protection of the laws, it violates the provisions of the fourteenth amendment to the ·Constitution of the United States, and the complainant, in behalf of himself and others similarly situated may maintain this action in this court notwithstanding the fact that all the parties reside in this state, provided the amount in dispute is material and it exceeds, exclusive of interest and costs, the sum of $2,000. The bill alleges that the total illegal tax levy is in excess of $2,000, and seeks to restrain the collection of the whole tax, and also seeks to cancel the levy and assessment as an apparent lien on his property.

The Circuit Courts of the United States have such jurisdiction as Congress has conferred upon them, and no other, except that which necessarily inheres in a court, such as punishments for contempt. By Act March 3, 1875, c. 137, § 1, 18 Stat. 470, Act March 3, 1887, c. 373, § 1, 24 Stat. 552, Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), and Act March 3, 1891, c. 517, §§ 4–6, 26 Stat. 827, 828 (U. S. Comp. St. 1901, pp. 548–550), we find the following developed as the jurisdiction of this court in such an action as this:

"That the Circuit ·Courts of the United States shall have original cognizance, concurrent with the ,courts of the several states, of all suits of a civil nature, at common· law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority."

While the amount of over $2,000 in dispute is requisite where the case arises under the Constitution or laws of the United States, diversity of citizenship is not. Where the case does not arise under such Constitution or laws, the Circuit Court, by a subsequent provision in the section, has jurisdiction if the parties plaintiff reside in one state and the parties defendant in another, and the amount in dispute, exclusive of interest and costs, exceeds $2,000. In Northern Pacific R. Co. v. Walker, 148 U. S. 391, 13 Sup. Ct. 650, 37 L. Ed. 494, Walter v. Northeastern R. Co., 147 U. S. 370, 13 Sup. Ct. 348, 37 L. Ed. 206, and Fishback ·v. Western Union Telegraph Co., 161 U. S. 96, 100, 16 Sup. Ct. 506, 40 L. Ed. 630, all tax cases, it was held that the Circuit Court of the United States has no jurisdiction of an action in equity to enjoin the collection of a tax when the amount of such tax does not reach or exceed the sum of $2,000, and the bills were dismissed. In the Fishback Case the complainant sought to have it decreed that the act under which the tax was assessed and levied was unconstitutional and void, that the Railroad Commissioners who levied the tax should be decreed to show the grounds of their assessment, that the act of the board in assessing the complainant's property be canceled, and that defendants be enjoined from proceeding to collect the tax. In Northern Pacific Co. v. Walker, supra, the bill also asked to have the assessment and tax levied canceled as a cloud on title. In United States v. Sayward, 160 U. S. 493, 498, 16 Sup. Ct. 371, 40 L. Ed. 508, the court points out the jurisdiction of the Circuit Court of the United States in

all cases of this nature. This rule is not affected by the fact that the operation of the act of March 3, 1891, c. 517, 26 Stat. 827 (U. S. Comp. St. 1901, p. 549), was to do away with any pecuniary limitations on appeals directly from the Circuit Court to the Supreme Court of the United States. The Paquette Habana, 175 U. S. 677, 20 Sup. Ct. 290, 44 L. Ed. 320; Holt v. Indiana, etc., Co., 176 U. S. 68, 20 Sup. Ct. 272, 44 L. Ed. 374. The result is that a bill filed in the Circuit Court, where there is not the requisite diversity of citizenship, must show that a question under the Constitution or laws of the United States or a treaty made is involved, and that the amount in dispute exceeds $2,000; but on appeal from the Circuit Court direct to the Supreme Court of the United States it need not appear that the amount in dispute on such appeal exceeds $2,000, if it does appear that the construction or application of the Constitution of the United States is involved, or that it is claimed that the Constitution or law of a state is in contravention of the Constitution of the United States. It is necessary, therefore, to take notice whether a decided case on appeal involving this question of jurisdictional amount involves objection to the sufficiency of the bill in this regard or only the amount in dispute on the appeal.

Bells Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892, was on writ of error from the Supreme Court of the state of Pennsylvania to the Supreme Court of the United States, and is not in point here on the question of the jurisdiction of the Circuit Court of the United States. Gulf, C. & S. F. R. Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, was before the Supreme Court on writ of error from the Supreme Court of the state of Texas. The other cases cited by complainant show that they were appealable to the Supreme Court regardless of amount in controversy or that the question of jurisdiction was not raised. In United States Express Co. v. Poe, Auditor, etc. (C. C.) 61 Fed. 475, which was a suit in equity to enjoin an assessment under a state law, the court, per Taft, C. J., held that, as the additional tax complainant would be compelled to pay by reason of the unconstitutionality of the law was less than $2,000, the Circuit Court had no jurisdiction and dismissed the bill. In Western Union Tel. Co. v. Poe (C. C.) 61 Fed. 449, 454, the suit was against the board of appraisers of the state of Ohio to restrain the assessment, etc., of a tax against the company in several counties of the state on the ground of the unconstitutionality of a state law. The question of jurisdictional amount in dispute was raised, and Taft, C. J., at page 454 of 61 Fed., held that, as the action was against the board of appraisers of the state, the excess of taxes to be paid by the company in all the counties of the state could be aggregated, and that, as the aggregate of such excess or illegal taxes exceeded $2,000, the Circuit Court had jurisdiction. The court said:

"Again, it is urged that the affidavits filed show conclusively that in no single county will the assessment against the complainant amount to $2,000; wherefore the argument is that the jurisdiction of this court cannot be supported by adding together the amounts due in each county. If my conclusion is correct, that this action will lie against the board of appraisers, there is nothing whatever in this objection, because the amount involved in controversy in the suit is the whole amount to be certified by the board under the law, less the aggregate amount which the complainant must pay in the various

counties of Ohio under such laws as are in force if the Nicholls law is not valid. The difference admittedly exceeds $2,000. For this reason, I am of the opinion that the bill does present a case for equitable relief in a federal court."

This doctrine would seem to be opposed to Northern Pac. R. Co. v. Walker, and Walter v. Northeastern R. Co., supra, where it was held:

"Following Walter v. Northeastern Railroad Company, 147 U. S. 370, 13 Sup. Ct. 348, 37 L. Ed. 206, it is again held that a Circuit Court of the United States has no jurisdiction over a bill in equity to enjoin the collection of taxes from a railroad company, when distinct assessments, in separate counties, no one of which amounts to $2,000, and for which, in case of payment under protest, separate suits must be brought to recover back the amounts paid, are joined in the bill and make an aggregate of over $2,000."

In Western Union Tel. Co. v. Norman, Auditor (C. C.) 77 Fed. 13, 20, it was claimed that the whole tax was illegal and void and in violation of the federal Constitution. The court held:

"The equity jurisdiction of the federal courts, in the case of a bill by a telegraph company to enjoin a State Auditor from certifying to the various county clerks the proportions of an alleged illegal tax to be collected in their several counties, is sustainable on the ground of preventing a multiplicity of suits, and because of irreparable injury, where such local taxes, taken separately, would be less than $2,000. Telegraph Co. v. Poe (C. C.) 61 Fed. 469, and Sanford v. Poe, 69 Fed. 546, 16 C. C. A. 305, 60 L. R. A. 641, followed."

In the opinion the court said:

"The bill, in addition to seeking to enjoin the collection of the taxes levied for the benefit of the state of Kentucky, seeks to enjoin the Auditor, Norman, from certifying to the different county clerks, 68 in number, their respective proportions of the taxes assessed by the board of valuation and assessment. and alleges that these local taxes, with the tax for the benefit of the state of Kentucky, will amount to about $10,000. The aggregate of these local taxes is thus shown to be over $2,000, exclusive of interest and costs. The case, we think, is not within the principle of Fishback v. Telegraph Co. (decided by the Supreme Court March 2, 1896) 161 U. S. 96, 16 Sup. Ct. 506, 40 L. Ed. 630, and the previous case of Walter v. Railroad Co., 147 U. S. 370, 13 Sup. Ct. 348, 37 L. Ed. 206. In both of these cases it was sought to enjoin the collection of local taxes which had been assessed and levied by the respective counties and municipalities. Hence the local taxes had been distinctly separated, so that a separate action could have been maintained against the counties and municipalities, if the taxes had been paid under protest. Here it is sought to prevent the Auditor from completing the appraisement and levy of taxes, which, if completed without legal authority, would be a wrongful act, and one probably subjecting him to an action by the party injured thereby. However this may be, the amount of tax in controversy between the plaintiff and the defendant, for the benefit of the state of Kentucky, is over $2,000, exclusive of interest and costs. The jurisdiction of the Circuit Court seems, therefore, to be clear from the face of the bill."

Attention is called to Cotting v. Kansas City Stockyards Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92. See same case below (C. C.) 79 Fed. 679; (C. C.) 82 Fed. 839; (C. C.) 82 Fed. 850. The complainants there were citizens of the state of Massachusetts and stockholders in the Kansas City Stockyards Company. They sued in behalf of themselves and all other stockholders, seeking, amongst other things, to have an act of the Legislature of the state of Kansas declared void as in violation of the Constitution of the United States. The action was based on the proposition that the enforcement of the

law in effect destroyed the value of the stock of the company, and so reduced its income or revenues as to damage its stockholders in large sums shown to be largely in excess of $2,000. The court below passed the question of jurisdiction by saying that it had not been seriously questioned. 79 Fed. 681. There was no holding in the case that such an action may be maintained in the Circuit Courts of the United States irrespective of the amount in dispute.

The complainant here sues in behalf of himself and all others similarly situated. It does not appear that any other has come in and joined in the suit.

In Cowell et al. v. City Water Supply Co. et al., 121 Fed. 53, 57 C. C. A. 393, it was held:

"The sum or value of the matter in dispute, which conditions the jurisdiction of a federal Circuit Court, is the amount or value of that which the complainant claims to recover, or the amount or value of that which the defendants will lose if the complainant obtains the recovery he seeks. * * *

"In a suit by an alleged owner of $1/325$ of certain real property, constituting waterworks and their appurtenances, to cancel and avoid mortgages thereon for $475,000, and to declare his interest in the property free from the liens of those mortgages, the sum or value of the matter in dispute is not the amount of the mortgages or the value of the entire property, but the value of the $1/325$ of the property which the complainant claims to own, and seeks to relieve from the liens of the incumbrances."

Where one sues in behalf of himself and all others of a class similarly situated, the aggregate interest of those who join in the suit, and not those of the whole class, constitutes the matter in dispute. Bruce v. Manchester & K. R. Co., 117 U. S. 514, 516, 6 Sup. Ct. 849, 29 L. Ed. 990; Ogden City v. Armstrong, 168 U. S. 224, 18 Sup. Ct. 98, 42 L. Ed. 444; Wheless v. St. Louis, 180 U. S. 379, 21 Sup. Ct. 402, 45 L. Ed. 583. See Johnson v. Waters, 111 U. S. 640, 4 Sup. Ct. 619, 28 L. Ed. 547; Handley v. Stutz, 137 U. S. 366, 11 Sup. Ct. 117, 34 L. Ed. 706.

What is the matter and the sum or value of the matter in dispute here? The complainant owns a farm of some 20 acres in the city of Utica. Its value, probably, is largely in excess of $2,000. The city of Utica, by its common council vested by the state with the taxing power, has levied thereon an illegal and an unauthorized tax, in violation of the constitutional rights of the complainant, in that it gives to his property no fire protection whatever, and unnecessarily and arbitrarily refuses to give it protection against fire or to make provision therefor, while at the same time it incurs an annual expense of many thousands of dollars to provide a water supply from outside sources to protect the property of the other citizens of said city against fire, and raises the sums to meet and pay such expense by a general assessment and tax on all the taxable property situated in said city, including that of complainant. The common council and city authorities have made a contract with outside parties to furnish this water for such purposes, having none of its own. The making of a contract for a supply of water for fire purposes is authorized by an act of the Legislature of the state of New York. This act is general in its terms, but the contract made, under and pursuant to which the expense is incurred and the tax to meet it assessed and

levied, expressly limits the supply to a certain territory and to certain designated parts of the city. If the law of New York authorizes such a contract, it is unconstitutional and void as is the contract itself. If it does not authorize such a contract, then the contract is void, and in either event the tax assessed and levied is illegal and its collection is in violation of the constitutional rights of the complainant and of the rights of all similarly situated, and its enforcement is illegal and a trespass upon the property rights of the complainant. The bill also alleges that the complainant was given no hearing, no right to a hearing, upon this question of the legality of this proceeding or tax, and that, as a levy has been made upon his property to enforce this tax and a sale thereof is threatened, he is about to be deprived of his property without due process of law, and that for the reasons stated he is also arbitrarily denied equal rights and protection under the law which are guaranteed to him under and by the Constitution of the United States. All this we will assume to be conceded by the demurrer. Still this action cannot be maintained in the Circuit Court of the United States unless the sum or amount involved and in dispute exceeds $2,000, exclusive of interest and costs. If for that reason this court has no jurisdiction to restrain these illegal acts and cancel the tax as a cloud on title, etc., and declare the contract void, the complainant is not without remedy, as he may sue in the state court, and an appeal may be taken by either party to the Supreme Court of the United States on the constitutional question involved irrespective of the amount in dispute.

The bill of complaint states that the amount to be paid under the contract for water, November 15, 1907, was $38,903.52, which is included in the tax levy; that a certain sum is included in the tax to pay the tax assessed against the water company by the city of Utica, as mentioned in the contract, etc.; that the tax rate in the city of Utica is about $9.80 per $1,000; that complainant's farm is assessed at $2,000; that additional expenses are being incurred for water mains, etc., amounting to some $120,000, the interest upon which sum will be added to the tax levy hereafter and become an additional burden on all the taxable property in the city of Utica, including that of complainant; that the tax warrant for 1907 has been signed and delivered, which includes a tax of over $20 assessed and levied on the said property of the complainant, and which includes the unlawful, illegal, and unwarranted tax complained of; that the expense of maintaining the fire department exceeds $35,000 per annum, which is supported by tax on all the taxable property of the city, and imposes an additional burden of taxation from which complainant derives no benefit; that, if not restrained, the city of Utica and its common council will continue in years to come to assess and levy and collect such illegal tax. Also that an actual levy to collect said tax of 1907 has been made on complainant's said farm, and it is advertised to be sold for the nonpayment of such tax. The complainant alleges, also, that he is able to pay such tax if it is adjudged legal.

It is evident, therefore, that the actual sum or amount in controversy between the parties in dollars and cents is at this time less than $22; that if the city and its authorities shall continue to assess such prop-

erty at $2,000, and gradually increase the taxation, the sum illegally assessed and demanded will increase, provided the city does not extend fire protection to the property of complainant. But it seems to be settled that in determining the jurisdictional amount in dispute the collateral effect of the judgment in other suits between the same or other parties cannot be considered. It is the direct effect of the judgment alone that can be considered. Bruce and Another v. Manchester, etc., Railroad, 117 U. S. 514, 6 Sup. Ct. 849, 29 L. Ed. 990; United States ex rel. v. Wanamaker, 147 U. S. 149, 150, 13 Sup. Ct. 279, 37 L. Ed. 118; Wheless v. City of St. Louis (C. C.) 96 Fed. 865. See, also, Russell v. Stansell, 105 U. S. 303, 26 L. Ed. 989.

In Bruce v. Manchester, supra, the court held:

"The matter in dispute, on which the jurisdiction of this court depends, is the matter which is directly in dispute in the particular cause in which the judgment or decree sought to be reviewed has been rendered; and the court is not permitted, for the purpose of determining its sum or value, to estimate its collateral effect in a subsequent suit between the same or other parties."

What the city will do in the future is conjectural. By paying the tax under protest, and bringing suit in the state courts to recover it as illegally assessed, levied, and collected in violation of the Constitution of the United States and of the rights of complainant thereunder, the question of the legality of the tax can be determined in the courts of the state. By bringing an action in the Supreme Court of the state for an injunction restraining the collection of the tax on the grounds stated, the whole matter can be tested first in the state courts, and then on appeal to the Supreme Court of the United States by the defeated party.

In Brown v. Trousdale, 138 U. S. 389, 11 Sup. Ct. 308, 34 L. Ed. 987, bonds had been issued by a county to the amount of some $400,000 in payment of a subscription by the county to the capital stock of a railroad company. Some 1,200 taxpayers joined in an action in the state court to enjoin the collection of a tax about to be levied to pay the interest on such bonds, alleging that the whole issue was invalid and seeking to have it so decreed. The cause was removed into the Circuit Court of the United States, and a motion to remand, on the ground that $500 was not in dispute (that being the amount required to give jurisdiction at that time), was denied. The Supreme Court of the United States upheld the jurisdiction of the Circuit Court. The tax for that year to be levied and collected did not reach $500 in the case of any one complainant. However, the bonds had been issued and were outstanding. It was certain that, unless canceled, a tax would follow each year. The court, per Mr. Justice Fuller, said:

"The main question at issue was the validity of the bonds, and that involved the levy and collection of taxes for a series of years to pay interest thereon, and finally the principal thereof, and not the mere restraining of the tax for a single year. The grievance complained of was common to all the plaintiffs and to all whom they professed to represent. The relief sought could not be legally injurious to any of the taxpayers of the county, as such, and the interest of those who did not join in or authorize the suit was identical with the interest of the plaintiffs. The rule applicable to plaintiffs, each claiming under a separate and distinct right, in respect to a separate and distinct liability, and that contested by the adverse party, is not applicable here. For although, as to the tax for the particular year, the injunction sought might

restrain only the amount levied against each, that order was but preliminary, and was not the main purpose of the bill, but only incidental. The amount in dispute, in view of the main controversy, far exceeded the limit upon our jurisdiction, and disposes of the objection of appellees in that regard."

There would seem to be some inconsistency between the cases. However, as there is no certainty that the amount in controversy between the city of Utica and the complainant will ever approach $2,000, I do not see how it can be held that any such sum is in dispute here. The city may change its attitude any year, or it may extend its water mains to the complainant's premises to-morrow and end all cause of complaint and all cause of action, except to recover a sum not to exceed $22, or to enjoin the collection of that sum. I think the cases cited are conclusive against jurisdiction in this court. Wheless v. St. Louis et al., 180 U. S. 379, 380, 381, 21 Sup. Ct. 402, 45 L. Ed. 583, affirming (C. C.) 96 Fed. 865, would seem to be decisive. There the proposition to assess the property was alleged, as here, to be in violation of the constitutional rights of the complainants; the action was by several taxpayers; the cost of the improvement was largely in excess of $10,000; the amount of the tax that would be assessed against any one of the complainants did not exceed $1,400 (see pages 380, 381, of 180 U. S.; page 403 of 21 Sup. Ct. [45 L. Ed. 583]), and was less than $2,000. The court, per Mr. Chief Justice Fuller, said:

"The 'matter in dispute' within the meaning of the statute is not the principle involved, but the pecuniary consequence to the individual party, dependent on the litigation, as, for instance, in this suit the amount of the assessment levied, or which may be levied, as against each of the complainants separately. The rules of law which might subject complainants to or relieve them from assessment would be applicable alike to all, but each would be so subjected, or relieved, in a certain sum, and not in the whole amount of the assessment. If a decision on the merits were adverse to the assessment, each of the complainants would be relieved from payment of less than $2,000. If the assessment were sustained, neither of them would be compelled to pay so much as that.

"It is true that the assessment has not been made, but the charge is that it is threatened to be made, and the purpose of the bill is to enjoin proceedings about to be taken to that end. We agree with the Circuit Court that in these circumstances there is no force to the suggested distinction between a case where the assessment has not in fact been made and a case where it has already been made. When made, neither one of these complainants will be called upon to pay a sum equal to the amount of $2,000, nor will any one of the lots be assessed to that amount."

It will be noted that this holding is somewhat ambiguous. Is it the amount of tax levied and to be collected under the assessment, or the amount of the assessment that determines jurisdiction? The case does not determine that question. The language is:

"When made, neither one of the complainants will be called upon to pay a sum equal to the amount of $2,000, nor will any one of the lots be assessed to that amount."

Again, the act reads—

"where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars."

I do not think it was intended to suggest or intimate that a matter in dispute of the value of just $2,000, and no more, gives jurisdiction.

I think the court had in mind and spoke with reference to the plea in that case, which reads as follows:

"Defendants filed a plea to the jurisdiction of the court, supported by an affidavit showing that the amount of special tax which would be assessed and levied against the property of any one of the complainants severally would not exceed $1,400, and would not be an amount equal to $2,000, and that hence the matter in dispute between the parties was not of the sum or value necessary to give jurisdiction to the Circuit Court of the United States, and that the bill should be dismissed for want of jurisdiction."

Assuming this to be so, in view of Fishback v. Western Union, 161 U. S. 96, 16 Sup. Ct. 506, 40 L. Ed. 630, where it is expressly held that the value of the matter in dispute must exceed $2,000, and also assuming that the amount of the assessment of the property—that is, its assessed valuation, alleged here to be $2,000—determines the value of the matter in dispute for jurisdictional purposes, still this court has no jurisdiction, as the complainant's property is not assessed at a sum in excess of $2,000. However, I think the language "assessed to that amount" refers to the amount of the tax to be imposed on the property and collected. Bouvier's Law Dictionary says:

"Assess. To rate or fix the proportion which every person has to pay of any particular tax."

Also:

"Assessment. Determining the value of a man's property or occupation for the purpose of levying a tax. Determining the share of a tax to be paid by each individual. Laying a tax. Adjusting the shares of a contribution by several toward a common beneficial object according to the benefit received."

The Century Dictionary gives the primary meaning of "assess" as:

"To set, fix or charge a certain sum upon, by way of tax; as, to assess each individual in due proportion."

The tax is assessed when it is apportioned. Really the property is assessed when the proportion of the tax it is to pay is fixed and determined. In common expression in New York it is assessed when a valuation is placed thereon as a basis for fixing its share of the tax. It would certainly be inequitable to hold that a man whose property is placed on the assessment book at a valuation of $2,100, and whose tax thereon for some purpose levied in contravention of the Constitution is only $2, may maintain an action in equity in the Circuit Court of the United States to restrain its collection, while one whose property is placed on the assessment book at a valuation of $1,950, and whose tax thereon for some purpose levied in contravention of the Constitution is $20, or even more, may not. Congress intended nothing of the kind, and I do not think the Supreme Court has construed or intended to construe the act so as to lead to such a result. If we say that the matter in dispute is the value of the object sought to be accomplished by the bill, viz., the prevention of the sale of a farm assessed at $2,000 (see Hunt v. N. Y. Cotton Exchange, 205 U. S. 322, 333, 336, 27 Sup. Ct. 529, 51 L. Ed. 821), still that value, so far as appears, is not in excess of $2,000, and by paying all that is in dispute—about $22—the sale of the farm is prevented. The case under consideration is not within the

principle of Davies, Collector, v. Corbin et al., 112 U. S. 36, 41, 5 Sup. Ct. 4, 28 L. Ed. 627.

In Wheless v. St. Louis, supra, the property had not been levied upon and advertised to be sold, but I do not see that it can be held that the assessed value of the farm is the amount in dispute. Those who levy the tax only claim some $22; they do not claim the farm. The title or ownership of the farm is not in dispute. There is no direct allegation that the amount in dispute is $2,000, exclusive of interest and costs. It is not a case like Wiley v. Sinkler, 179 U. S. 58, 21 Sup. Ct. 17, 45 L. Ed. 84.

I am forced to the conclusion, on the allegations of the bill, that the Circuit Court of the United States is not shown to have jurisdiction. It must appear on the face of the bill by direct allegation, or by necessary implication from the facts stated, that the matter in dispute is in excess of $2,000 in value, exclusive of interest and costs. Grace v. Ins. Co., 109 U. S. 278, 3 Sup. Ct. 207, 27 L. Ed. 932; Peper v. Fordyce, 119 U. S. 469, 7 Sup. Ct. 287, 30 L. Ed. 435; Vance v. Vandercook Co., 170 U. S. 468, 18 Sup. Ct. 645, 42 L. Ed. 1111; North American Co. v. Morrison, 178 U. S. 262, 20 Sup. Ct. 869, 44 L. Ed. 1061.

The demurrer must be sustained on the ground the bill fails to show jurisdiction in this court, but without costs. Complainant may amend, if he shall be so advised, within 30 days.